## SOCIETE DES MINES D'ARGENT ET FONDERIES DE BINGHAM, Appellant, *v.* RICHARD MACKINTOSH, Respondent.

PRINCIPAL AND AGENT.—ACCOMMODATE NOTE GIVEN TO AGENT.—M. was agent of appellant, and its financial manager as M. commercial director. Defendant with knowledge of this executed a note to M., commercial director, as a personal accommodation, receiving M.'s personal note in return. At same time M. promised not to negotiate the note, or use it except as an accommodation in presenting correct accounts as to certain mining transactions. The note was placed in appellant's safe, and afterwards M. fled the country. The note was found in the safe, over a year afterwards. It was presented for payment and payment refused, and appellant brought suit; *held*, that appellant was payee of the note.

ZANE, C. J., *dissenting*.

APPEAL from a judgment of the district court of the third district and from an order refusing a new trial.

Action upon a promissory note, setting forth note, request for payment and non-payment. No allegation of fraud or collusion was contained in the complaint, but it alleged that the plaintiff had been doing business as a corporation in Utah ever since the 4th day of August, 1879, and that defendant had had business relations with it; and further, that plaintiff during such time kept a banking account at McCornick & Co.'s, under the name of F. Medhurst, Commercial Director, or some abbreviation thereof and that defendant had extensive dealings with it under such designation.

Defendant's answer denied the allegations of the complaint, and set up the defense of the note being given as a personal accommodation to Medhurst, and also alleged a counter claim on the note given by Medhurst and asked that if the note sued on by plaintiff be held obligatory, that the counter claim be allowed.

The cause was tried by agreement before the court without a jury, and the court made the following findings of fact:

1st. The plaintiff from a time prior to February 3rd, 1882, has been a corporate body organized under the laws of the Republic of France and doing business in Utah.

2nd. From about August 4th, 1879, until after February 3d, 1882, F. Medhurst was an agent for plaintiff in Utah, had charge of its commercial business, and did business for the plaintiff, in the name "F. Medhurst, Commercial Director," and he often used abbreviations of the words "Commercial Director," in signing business papers relating to business of said plaintiff, and during said time the said Medhurst also transacted business for himself in Utah.

3rd. That said defendant, for the accommodation of said Medhurst personally, and without any consideration from said Medhurst or said plaintiff, on the 3d day of February, 1882, made and delivered to said Medhurst personally the $7,000 note described in the complaint, and said Medhurst personally is the payee named in said note, and the words "Commercial Director" following his name are descriptive words only, and the note was not made or de-

livered to the plaintiff, or to said Medhurst as the agent or "Commercial Director" of the plaintiff, or in the business of the plaintiff.

The evidence showed that Medhurst was the financial agent of the company; that Medhurst was overdrawn with his company almost all of the time. The first check was dated October 4th, 1881, payable to the order of Mackintosh for $4,500, and an entry upon the blotter book of the plaintiff as follows: "October 4th, bills receivable dr., to cash, R. Mackintosh, note dated October 4th, and due on or before February 1st, 1882, bearing 10 per cent. interest." This entry was made without defendant's knowledge or consent. Defendant testified that he had never borrowed any money of the plaintiff, had never received any money from it except for sampling ore, had never owed it any money and had never given such a note to the plaintiff and could not remember about the check. Witness Fox testified that he made the entry on the blotter-book at Medhurst's order, that he could not remember of ever having seen such a note. Evidence showed further the stub of a check for $1,700, dated February 1st, 1882, drawn by Medhurst, payable to his own order, deposited by him to his private account.

There was an entry on the stub of check "F. Medhurst, Commercial Director, loan to Mackintosh, entered February 4th," made in the handwriting of Fox, the book-keeper, with which defendant did not appear to be connected in any other way. The stub indicated that the money on the check went to Medhurst, and the books of Wells, Fargo & Co., where Medhurst kept his private account, showed on February 1st, 1882, a deposit of $1,700 to Medhurst's private account. Defendant testified that he never, before the trial, heard of or saw this check.

The evidence further showed that on February 1st, 1882, Medhurst was indebted to the company in the sum of $3,917.16. Also on February 4th, 1882, a check for $1,500 dated February 4th, 1882, drawn by Medhurst as Commercial Director, payable to the order of Mackintosh. Defendant testified that he and Medhurst were sitting in the office, Medhurst drew the check, handed it over to him,

he endorsed it and handed it back to Medhurst. The books of Wells, Fargo & Co. showed a deposit on that day of $1,500 by Medhurst to his own private account. On the stub of the check was written loan to Mackintosh. Defendant testified that he got nothing, but simply indorsed the check because Medhurst asked him to do so.

The evidence further showed that on February 4, 1882, Medhurst directed Fox, the book-keeper, to enter on the stub of the check for $1,700, that it was a loan to Mackintosh, and on the stub of the check for $1,500 that it was a loan to Mackintosh, and on the blotter book $7,000 bills receivable dr. to note of Mackintosh, which entries were made without defendant's knowledge or consent.

The testimony bearing on the giving of the $7,000 note was as follows: Mackintosh testified that Medhurst represented to him that in negotiating for the Hecla mine in Montana, he and two associates were out expenses in the sum of $7,000, and that he wanted to borrow a note for that amount as an asset for himself and his associates, that it was a mere matter of form, that the negotiation had fallen through, and that the Old Telegraph mine was being transferred; that he stepped up to Medhurst's office; that there the two notes Medhurst to Mackintosh and Mackintosh to Medhurst were drawn, and the memorandum given by Medhurst; that Medhurst then told Fox that the note was Medhurst's personal property and was not to be negotiated, and the transaction was concluded there; that there Medhurst gave Fox an order about a check, and a check for $1,500 was drawn and handed over to him, and he endorsed it and handed it back to Medhurst, supposing it was on the transfer of the account; that he had talked with Medhurst once since about getting back his note, but Medhurst had replied that the arrangements were not complete, but that he would hand him back his note in a little time; that in 1884 Medhurst had left the country under a cloud. Fox testified that the note was given to him by Medhurst, with orders not to negotiate it, and that it was put in the safe, and remained there until some time in 1884. The other facts appear in the opinions.

*Messrs. Marshall & Royle,* for appellants.

*Messrs. Bennett, Harkness & Kirkpatrick,* for respondent.

BOREMAN, J.:

The plaintiff (appellant) sued the defendant (respondent) upon a promissory note as maker. Upon the trial, judgment was rendered for the defendant. The plaintiff moved for a new trial, which, being overruled, he appealed to this court from both the judgment and from the order overruling the motion for a new trial. The facts of the case are substantially as follows: The plaintiff had since 1879 been engaged in mining in Utah. It was represented in the territory by F. Medhurst and C. B. Cohen. Medhurst was the manager of its financial affairs, under the style of "Commercial Director." Cohen was the general manager of the mines. The defendant, prior to and during that time, had been engaged in the business of sampling ores, with office at Salt Lake City. The plaintiff had its ores sampled by the defendant. The accounts for sampling were made out in the name of the company, and the checks given for money to pay such accounts were usually signed, "F. Medhurst, "Commercial Director," or "F. Medhurst, Com. Dir." The financial business of the company was transacted in the name of "F. Medhurst, Commercial Director." This manner of transacting the business of the company was known to the defendant. On the 3d of February, 1882, Medhurst asked the defendant to execute to him his promissory note for $7,000, as a matter of accommodation to him (Medhurst). The note was, as the defendant understood, to be used as an asset in the transfer of the plaintiff's mining property here in Utah, in connection with some indefinite deal in regard to the Hecla mine in Montana. It was a personal accommodation to Medhurst, to enable him, in the transaction, to present apparently correct accounts. Medhurst promised the defendant that the note should not be negotiated, but should be held only as such asset. The note which Medhurst presented, under

this arrangement, for the defendant's signature, was made payable to "F. Medhurst, Commercial Director." At the same time, in return for the defendant's action, Medhurst executed and delivered to the defendant his note for the same amount, and payable at the same date, and signed "F. Medhurst, Com." Medhurst, also, at the same time, wrote and delivered to the defendant a letter, stating that the note which the defendant had made was a personal obligation to himself, not for value, but in exchange for a note of like amount, term, and interest, given to defendant by Medhurst, and therein promising not to discount or otherwise use the note. This letter was signed, "F. Medhurst." At the same time, and as part of the same transaction, the defendant received, indorsed and handed back to Medhurst a check in the usual form, on McCornick & Co., bankers, for $1,500. The deposits of the plaintiff were kept at that bank under the name of "F. Medhurst, Commercial Director," and the check was signed, "F. Medhurst, Com. Dir." In addition to the ore-sampling checks referred to, the plaintiff's check-books show two other checks of prior date, the one for $4,500, and the other for $1,700, to have been drawn in favor of the defendant. The one for $4,500 was shown to the defendant, and he recognized his signature, but did not remember the circumstance of giving it. He had no recollection of the $1,700 check. Medhurst handed the $7,000 note of the defendant to the company's book-keeper, telling him that it was not to be negotiated; that it was a personal matter, and he himself would attend to it. That was the last time, so far as the evidence discloses, that Medhurst saw the note. The book-keeper placed it in the company's safe, among company papers. Some private papers, also, of Medhurst were in the safe. Some time after this Medhurst disappeared, and thereafter the company took possession of the safe and contents. This note of $7,000 sued on was found, among other papers, in the safe, and the plaintiff had it presented to the defendant for payment, and payment demanded. Payment was refused; the defendant claiming that it was a personal affair between Medhurst and himself, and without money consideration,

but given merely for the accommodation of Medhurst. The company then brought this action. Judgment was given, in the court below, for the defendant, and thereupon the plaintiff appealed to this court.

The first question for our consideration is as to who is the payee of the $7,000 note sued on. The plaintiff claims to be the payee, and the defendant claims that Medhurst individually is the payee. Upon the face of the note, it is made payable to " F. Medhurst, Commercial Director." The courts have sometimes held that, in such a case, an action may be maintained in the name of either the agent or the principal. If the transaction was known to be with the principal, but through the agent, it would be especially proper that the suit be in the name of the principal. But if the agent were acting apparently on his own behalf or responsibility, or as holding the property in trust, having given full security to his principal, as in case of a guardian who has given bond for the property intrusted to him, an action in the name of the agent would be proper, and the affix of the word "guardian" might be treated as *descriptio persona*. The true rule evidently is that recognized by the supreme court of the United States in the case of *Bank* v. *Bank,* 5 Wheat., 326, namely, that where, on the face of the paper, circumstances appear from which it might reasonably be inferred that it was either a private paper or an official one, the matter being in doubt, extrinsic evidence was proper to remove the doubt. In that case the action was based upon a check dated at "the Mechanics' Bank of Alexandria, and the body of it read, "Cashier of the Bank of Columbia, pay to the order of P. H. Minor, Esq., ten thousand dollars, and signed "Wm. Patton, Jr." The Mechanics' Bank was sued on the check, and in defense set up that it was not the check of the defendant bank, but was the individual check of Patton. Parol evidence showed that Patton was the cashier of the defendant, and that Minor was its teller; that the check used was taken from a book of blank checks kept for use by the cashier in his official capacity; that the cashier had frequently used the blanks out of that check-book in his official transactions; that, in using these blanks officially, he signed them

with the words "Cas." or "Ca." added to his name, and that
there was no other difference between those checks and the
one in question in that action; that, although these check-
books were intended for the use of the bank, yet the checks
were sometimes used for other purposes; that, in the cor-
respondence of the bank, the cashier generally added to
his name some words designating his official capacity as
cashier, but this was not always done, nor was it deemed
indispensible, if from other circumstances the correspond-
ence appeared to be official. The evidence showed that
the cashier of the bank upon which it was drawn, con-
sidered the check to be the official check of Patton, as did
also the cashier of the Branch Bank of the United States,
through which it passed. Evidence was likewise intro-
duced, in behalf of the Mechanics' Bank, to show that
Patton, at the time he drew the check, declared that it
was his private individual check, that he had funds in
the Bank of Columbia to meet it, and that it was passed
by him to the Mechanics' Bank as the individual check of
Patton; and, further, that the Mechanics' Bank paid to
Patton the amount of the check. The court, in referring
to the character of the evidence introduced to show the
check to have been an official and not a private transaction,
said: "The evidence resorted to for this purpose was the
most obvious and reasonable possible, namely, that this was
the appropriate form of an official check; that it was in
fact cut out of the official check-book of the bank, and noted
on the margin; that the money was drawn in behalf of and
applied to the use of the Mechanics' Bank; and by all the
banks, and all the officers of the banks, through which it
passed, recognized as an official transaction. It is true, it
was in evidence that this check was credited to Patton's
own account on the books of his bank; but it was done by
his own order, and with the evidence before his eyes that
it was officially drawn." So, in the case at bar, the fact
that the defendant considered the note as private, and not
official, and that it was so declared by Medhurst, counted
as nothing when all the *indicia* of official character were
given to the note by the defendant and by Medhurst. The
note was drawn payable to "F. Medhurst, Commercial

Director"— the appropriate form of a note payable to the plaintiff according to the style of carrying on the financial business of the plaintiff in this territory. The money was drawn from the plaintiff on behalf of the defendant, and applied, by his direction, to the private account of Medhurst. The name of Medhurst, with the words "commercial director," or some contraction thereof, was recognized by the banks, and officials of the banks, where such name, with the affix, appeared; and the defendant, in addition thereto, had transacted business with the plaintiff frequently under that name and style. We see, therefore, no escape from the conclusion that the plaintiff was the payee of the note. All of the facts point that way, except that the defendant, in signing the note, intended to make himself liable to Medhurst personally. But so did Patton in the case referred to; but that did not change the case. The defendant's own negligence is to blame for not doing what he intended to do. He paid very little attention, if any, to the form of the note. He was trusting to the words of his friend, Medhurst, when, at the very time, Medhurst's acts were different from his words. He allowed himself at that very moment to be used by Medhurst to draw money from the company, and place it to the credit of Medhurst, and he allowed that friend to use his name to deceive and defraud the company by presenting a false voucher, when from his own testimony we learn that he knew that Medhurst proposed using the note as a voucher in the transfer of its property in a trade in which Medhurst was in some way interested. The note was given to make Medhurst's accounts appear correct when they were otherwise; and they were still otherwise when defendant last spoke to Medhurst about the matter, for he was not then ready to return the note to the defendant. We do not consider it important that the defendant did not have in his mind at the time the idea of deceiving the plaintiff. A false front was to be presented to some one; and, although the defendant did not have it in his mind to deceive the plaintiff, he did not inquire to whom the false front was to be presented, but acted extremely negligently and indifferently in the matter, trusting, no

doubt, implicitly to the good faith of Medhurst. We do not see how either the defendant or Medhurst could consider the transaction as one personal to Medhurst, when at that very time the defendant signed a check as a part of the transaction, whereby $1,500 were taken out of the company's funds in McCornick's bank, and transferred to Medhurst's private account in Wells, Fargo & Co.'s bank. The defendant does not seem to have looked at the face of the check, but indorsed it blindly, at the request of Medhurst. The whole transaction shows that, although Medhurst told the defendant that the note was a personal matter, Medhurst did not so consider it. He immediately had the company's book to show the transaction as a company's affair. He probably intended to save the defendant harmless, and to do so gave him a note for a like amount, and the defendant has it; but it cannot avail against a company from which value has passed for the first note, and in ignorance of the counter-note. The defendant intended that the note he gave was to be acted upon by some one. He saw it acted upon by the company, through its agent, immediately upon its execution, by its parting with its money upon a check indorsed by the defendant. Where such is the case, the party is responsible, and is estopped from denying his liability: Bigelow, Estop., 489, 490; *Freeman* v. *Cooke*, 2 Exch., 654.

It cannot be said that, because Medhurst was the agent of the plaintiff, therefore the agent's knowledge was the company's knowledge, and the plaintiff was bound by his acts in giving the note and letter to the defendant, and in stating to him that the transaction was a private personal affair. Where a party combines with the agent in such a way as to cause the principal to be wronged out of his property or money, the knowledge of the agent is not the knowledge of the principal, nor is the principal bound by the acts of the agent. *Insurance Co.* v. *Minch*, 53 N. Y., 144; *Bank* v. *Mott*, 39 Barb., 180; *Piedmont* v. *Ewing*, 92 U. S., 377. It is a general rule that the principal is bound by the knowledge of his agent, but this rule is based upon the principle of the law that it is the agents duty to communicate to his principal the knowledge which he has respect-

ing the subject-matter of negotiation, and upon the presumption that he will perform his duty; and that is the doctrine inculcated by the case of *Distilled Spirits*, 11 Wall., 356, cited by the defendant. But the rule based upon such a principle of law cannot, in reason, be invoked by one who knows at the time that the agent is violating the rule, and intends to deceive, rather than inform, his principal in regard to the matter. If the company be taken as being informed of the true object of the note, and the company was the one seeking to present a false front, then it was not a personal matter of Medhurst, but it was a transaction with the company, and the company, not having given value for it, the defendant is liable. We do not think that the case of *Bank* v. *Town of New Milford*, 36 Conn., 93, is authority for applying the general rule in a case like the one at bar. In that case it appears that one J. J. Conkling was the cashier of a bank, and at the same time the treasurer of a town. In his capacity of treasurer of the town he made a note as the note of the town—the town authorities being ignorant of the matter; and, in his capacity of cashier, he discounted the note, and put the money in his own pocket. The court said that, if he purposed to pledge the credit of the town, the act was a gross fraud upon the town; and that if he did not so intend, but, instead thereof, intended to restore the money, and take out the note, and let the town know nothing of the transaction, then there was no meeting of minds necessary to create a contract that would support the action; that the contract, if any was made, was made by Conkling on behalf of the bank. No other mind than his met the mind of the agent of the town in making the contract. No other mind than his was called to act in the matter. He was agent of the bank, and had full knowledge of the fraud; and that now the bank, if it ratify his contract, and confirm his agency, must accept his knowledge, and be bound by it, precisely as if the loan had been made, and the knowledge had, by the board of directors. In the case at bar the contract was not made in the brain of the agent alone of the company, but by the active co-operation of the defendant himself. It was not, therefore, a fraud on the de-

fendant.    The agent Medhurst, had full knowledge of the
fraud, but the active co-operation of the defendant enabled
him to commit it, and it would not have been committed
without such co-operation.    If the authorities of the town
of Milford, other than the same person who was the bank's
own agent, in the case referred to, had joined in the fraud,
there would have been good reason for holding the town
responsible; the transaction being in the regular course of
business and for value.    There is nothing in that case that
would militate against the doctrine as laid down in *Insur-
ance Co.* v. *Minch*, above referred to.    As said there, the
rule was made for the protection of innocent third persons,
and not to further frauds upon the principal.

As the case will have to be reversed, a further examina-
tion of the exceptions and alleged errors is unnecessary.
The judgment and order overruling the motion for a new
trial are reversed, and the cause remanded.

HENDERSON, J., (*concurring.*)

I concur with my brother Boreman that, under the cir-
cumstances of this case, the plaintiff is the payee of the
note upon which this suit is brought.    I am of opinion
that the third finding of fact, that the note was given with-
out consideration, is not supported by the evidence.    The
check for $1,500 must, in my judgment, be regarded as a
consideration, to that extent, for the note.    The defendant
made his note to the plaintiff, and at the same time, and
as part of the same transaction, he received the plaintiff's
check for $1,500, drawn by it on its funds in the bank, and
he indorsed this check, and delivered it to Medhurst in a
transaction which was purely personal between him and
Medhurst.    The transaction is the same as though defend-
ant had taken the check to the bank and drawn the money,
and then delivered the money to Medhurst.    It is true that
Medhurst was the agent of plaintiff; and if the defendant
had made the entire transaction with Medhurst as agent,
supposing and understanding that it was for the benefit of
the plaintiff, and that he was dealing with it all the time,
it would be different.    But he gave his note to the plain-
tiff, and received the plaintiff's check, and indorsed it to

Medhurst who actually drew the money, and claims that the whole transaction was with Medhurst personally. He must be charged with notice that Medhurst could not deal in this way with his principal.

ZANE, C. J., (*dissenting.*)

I dissent from the judgment of the court. It appears, from the pleadings and evidence in this case, that the appellant, at the time of the transaction in question, was a corporation by virtue of the laws of the Republic of France, by the name of "Societe des Mines D'Argent et Fonderies de Bingham," and that it was working the Old Telegraph mine, situated in Utah; that it appointed F. Medhurst its commercial agent to conduct the financial business of the mine, and sent him here; that appellant's account at the bank, and other business transactions, were in the name of "F. Medhurst, Commercial Agent," or some abbreviation thereof, and that one Cohen was general manager of the mine, and M. C. Fox was appellant's book-keeper, acting under the direction of Medhurst. It also appears from the evidence that defendant, Mackintosh, was engaged in business in Salt Lake City, and as an ore sampler in the usual course of his business, received and sampled the Old Telegraph ores shipped to him, paid the back freight, and sent in his bills, and received checks on Mc-Cornick & Co., bankers, and in that way he received payment. It appears, further, that Medhurst was also doing business for himself and on his own account; that in one transaction, unconnected with the business of plaintiff, the defendant paid him about $10,000 as his share of the proceeds, and that defendant had great confidence in the financial ability, business capacity, and integrity of Medhurst, although he had never known him until he took charge of the appellant's business, nearly three years before the note sued on was given. Under these circumstances, it appears, Medhurst called at defendant's office during business hours, and said to him, as defendant testified, that he wanted defendant to do him a favor; that Cohen, Wattenwiler and himself had been negotiating for the Hecla mine in Montana; that the expenses of the negotiation amounted

to $7,000; and that he wished to borrow defendant's note for that amount for himself.    Defendant testified that he knew all three of the men, and had confidence that Medhurst was telling him the truth; that defendant went to Medhurst's office with him, and had some conversation with respect to the matter, in which Medhurst said that he would give his note to defendant in exchange, and a letter explaining the transaction; that the notes and the letter were then signed and delivered.    They are as follows:

<blockquote>
"3rd February, 1882,

Salt Lake City, Utah.

"Six months after date, for value received, I promise to pay to F. Medhurst, Commercial Director, or order, the sum of seven thousand dollars ($7,000) together with interest at the rate of ten (10) per cent. per annum.

R. Mackintosh."
</blockquote>

<blockquote>
"3rd February, 1882,

Salt Lake City, Utah.

"Six months after date, for value received, I promise to pay R. Mackintosh, or order, the sum of seven thousand dollars, ($7.000), together with interest at the rate of ten (10) per cent. per annum.

"F. Medhurst,
Com."
</blockquote>

<blockquote>
"3rd February, 1882,

Salt Lake City, Utah.

"My Dear Mackintosh:

The object of the present is to state that you have this day given me, as a personal obligation to myself, your note of $7,000, payable in six months, together with interest at rate of ten per cent. per annum, and not for value received, said note being given in exchange for one of mine of like amount, term, and interest; and I hereby pledge myself not to discount or in any way make use of your said note; and thank you for the favor conferred,

F. Medhurst."
</blockquote>

The first note is the one in suit, and the defendant testifies that it was given to Medhurst as an accommodation to him, that the second note was given as a memorandum to be held until the first should be returned, and that the above letter states the transaction truly. Fox testified that Medhurst gave the note sued on to him, and told him to put it in the safe, and not to negotiate it; that he put it in an envelope by itself, and then in a drawer in the safe. Medhurst's private papers and the company's papers were in the same safe, and no other delivery to defendant is shown. Nearly two years afterwards demand of payment was make on defendant. The note was found in the safe after Medhurst had left the country. The main question in issue is, was Medhurst the payee of the note, or was the corporation the payee? The name of the plaintiff does not appear in the note. Medhurst is payee on its face; and in the absence of proof of extrinsic facts, the court could hold the words "commercial director" descriptive only: *Moss* v. *Livingston*, 4 N. Y., 208. Therefore the plaintiff was compelled to resort to extrinsic evidence, and to assume the burden of proof, in order to show that it was the payee ;and the defendant was required to furnish evidence only to meet this, and to support the legal effect of the terms of the note. The note was found in an envelope by itself. It is true that it was in defendant's safe; but Medhurst's private papers were also there, so that the place where the note was found affords no inference of ownership. It is true, also, that the entries made in plaintiff's books indicate that defendant at different times had borrowed of plaintiff sums of money amounting to $7,000, and that the note sued on was given to secure that sum; but the evidence shows beyond all question that defendant never borrowed any money of the plaintiff, and that the entries were made by Fox, under the direction of Medhurst, without any knowledge on the part of Fox, and without the knowledge or consent of defendant. These entries are explained by the fact that Medhurst, as the agent of the plaintiff, had used $7,000 of its money on his own account, and that he was expecting an inspection of the books he was keeping by a representative of the

company from France, and he desired that the books should show that some responsible man had the money, instead of himself. The conclusion from the evidence is irresistible that the entries on the plaintiff's books were false and fraudulent, and that defendant had no notice that Medhurst was overdrawn.

It is claimed, also, that the $1,500 check was a part of the transaction in which the notes were exchanged and the letter was given. The check is as follows:

"No. 2776.                          SALT LAKE CITY, UTAH.
                                       February 4, 1882.

 McCornick & Co., Bankers, Salt Lake City, Utah.
Pay to the order of Richard Mackintosh, fifteen hundred dollars, ($1,500.)

                                      F. MEDHURST,
                                        Com. Dir."

This check bears date February 4, 1882, and its stub, produced by Fox, shows that the check was given on that day, and a deposit of it by Medhurst was made on the same day, as is testified to by Dooley, and as is shown by the deposit ticket, and the books of Wells, Fargo & Co.'s bank. The bank was near the place of the transaction, and it is probable that the deposit was made on the day the check was given. All of these dates indicate that the check was given on the 4th, and the dates on the notes exchanged and the letter are all on the 3d. Fox says, in answer to the question, "When was it you first saw this note of $7,000 as book-keeper of the company?" "I saw it, I think, the day after it was made—on the 4th of February." To another question, he answered: "He gave it to me, and told me to put it in the safe, and it was not to be negotiated." To the question, "Do you remember the transaction in which this note was given that is sued on?" He answered: "No, sir; I don't remember only as it is indicated on the books."

After defendant had stated the transaction in his testimony without mentioning the check, he stated further, Medhurst "told Fox in my presence, and I repeated it

afterwards, that that was his personal property, not to be negotiated in any way; that it was not to go on the outside. It was simply an accommodation for him, in connection with this transaction, that he had told me about up in Montana—this Hecla mine. The transaction was all concluded there. When he turned, he had given Mr. Fox the order about a check, and until this morning I didn't know exactly what the amount of that check was. He passed the check over to me on the other side of the table where I was. Says: 'Here, Mack., endorse that check.' I supposed it was on the transfer of the account, whatever he was doing, which I had no reason to doubt. I signed my name on the back of it, and left the check with him." In answer to another question, defendant said that he knew that he was giving a note to .F. Medhurst for the sum of $7,000; and, in answer to the further question, "Did you notice the words 'commercial director' at that time?" said: "If I did, I took no notice of it. It had no import to me, and I never knew it until I saw the note in Mr. Marshall's hands, the attorney." It is quite clear that the defendant's recollection of the check for $1,500, and that transaction is very slight. That he indorsed it is shown by his name on it; and it also appears, from Medhurst's account at the bank, that Medhurst got the money on it, while defendant got nothing. It is plain from the evidence, when carefully considered and weighed, that the note sued on was given on the 3d of the month, and the check was drawn on the 4th. But if it were conceded that the check transaction took place on the 3d, and immediately after the two notes for $7,000 had been exchanged, and the letter had been given as defendant stated, still it does not appear that the check was a part of the note transaction. The check was not taken into consideration in that transaction. It does appear that the one was no part of the consideration of the other. They were separate and independent transactions. It will not do to say that one contract is a part of another simply because one immediately follows another. In order to make the one a part of the other, they must depend in some way upon each other. It is claimed that defendant made himself liable

to plaintiff by indorsing the $1,500 check; that, by so doing, he enabled Medhurst to obtain from plaintiff that amount. But it is plain that the indorsement of defend-ant on the check was not necessary to enable Medhurst to receive money from his principal. He was its financial agent, and received and paid out its money. The truth is, as the evidence shows, that he wished the books of the company to indicate to another representative of the plain-tiff, whom he expected would examine them, that the money he had used was loaned out. But the evidence does not show that any such agent examined the books, and was misled by the indorsement of the check in question, or that any such agent ever knew of it until after Medhurst had fled from the country. The appellant never lost anything by relying on the check transaction. It never, by acting on the apparent credit, lost any right that it ever had. Therefore it cannot be heard to say that de-fendant's indorsement of the check was a fraud upon it, or that defendant is estopped from showing that the transaction was a mere accommodation, without considera-tion, and that its collection would be a fraud upon him. He is not estopped from showing the truth. The plaintiff has not sued upon this check, nor does it rely upon fraud. If so, it should have set up the fraud in its complaint. The appellant simply relies on the note for $7,000. The fore-going is the evidence relied upon to show that the note sued on was given to the plaintiff. When carefully exam-ined and weighed, as we have seen, this evidence should receive but little weight.

We now come to the consideration of the evidence in support of the position that the note sued on was given to F. Medhurst personally. The note given in exchange for this note was Medhurst's personal undertaking. This fact furnishes a very strong presumption that the note he received in exchange was his own. In *Bank* v. *French*, 21 Pick., 486, 32 Amer. Dec., 280, the court say: "The principle is that the promise must be understood accord-ing to the intention of the parties. If, in truth, it be an undertaking to the corporation, whether a right or wrong name, whether the name of the corporation or some of its

officers be used, it should be treated as a promise to the corporation. And there is no so safe criterion as the consideration. If this proceed from the corporation, it raises a very strong presumption the promise is made to it. If no express promise be made, but it be left to legal implication, it must be to it." In that case the note was made to the cashier of the Commercial Bank, Boston. Therefore, if this cross-note be a consideration, it only supports the other positive proof that the note in suit is made to Medhurst, who gave this consideration; and, if there was no evidence of the intention, the presumption would be that the payee is he who gives the consideration. In fact, the note is without pecuniary consideration. And even in this view the defendant gets the strength of the legal inference referred to by the court above; for in such case the inquiry, who did the maker intend to favor? takes the place of a valuable consideration; and the proof clearly shows defendant intended to favor Medhurst. In his letter to the appellee at the time the note in question was delivered, Medhurst stated that defendant had given, as a personal obligation to himself, the note of $7,000, and that it was given in exchange for one of his of like amount, etc. This would appear to be conclusive upon the question. It certainly should be so regarded as against any false and fraudulent entries made on the books of the company without defendant's knowledge or consent. In addition to this, the defendant was a witness in the case, and he testified that the note was given to Medhurst as an accommodation to him, and without any consideration. His testimony is very explicit and clear, and he is corroborated by appellant's book-keeper, Fox, who certainly could have no motive, so far as appears from the evidence, to give false testimony. That this note in suit was given to Medhurst, and that he was the payee, is certainly established by the great preponderance of the evidence. The appellant selected and sent to Utah a man who was a stranger here to manage a large business. By this act it commended him to business men, and vouched for his integrity. The defendant dealt with him, and believed his representations, and the appellant now insists on taking

advantage of a gross fraud practiced upon the defendant by its agent to take this large sum of money from him without any consideration whatever.

I am of the opinion that the court below was right in finding that the note in suit was made and delivered to Medhurst personally for his accommodation, and without consideration.