# CLARA M. SUMMERS, Respondent, v. METROPOL-ITAN LIFE INS. COMPANY, Appellant.

### St. Louis Court of Appeals, December 17, 1901.

1. **Error: CONFLICTING INSTRUCTIONS.** It is error for the court to give conflicting instructions, but conflicting instructions are harmless when the points of conflict are erroneously favorable to the party complaining on appeal.

2. ———: ———: **FINDING OF FACTS.** It is error to give an instruction calling for a finding of fact which there is no testimony to support, or which is beyond the issues submitted.

3. **Fraud in Procuring Insurance.** Remediable fraud in procuring an insurance must involve intentional fraud.

4. ———: **BENEFICIARY, RIGHTS OF.** Where an insurance is obtained by fraud of the assured, the beneficiary can not recover, although innocent of participation in the fraud.

5. **Suicide, Defense on Insurance Policy:** STATUTORY CONSTRUCTION. Under the Missouri statute (sec. 7896, R. S. 1899), suicide of the assured constitutes no defense in an action on the policy of insurance, without proof that the assured contemplated suicide at the time he made his application for the policy, despite any agreements in the policy to a different effect.

6. ———: ———: **EQUITY: PRACTICE, TRIAL.** An insurance obtained by any fraud remediable at law or in equity may be avoided on a proper showing of the fraud. The Missouri statute (R. S. 1899, sec. 7890) on misrepresentation does not preclude the defense of fraud in obtaining a policy.

7. **Insurance: MISREPRESENTATION IN OBTAINING INSURANCE POLICY.** No misrepresentation contained in an application for insurance is a defense to a life policy in Missouri unless the matter misrepresented has actually contributed to the event on which the policy was to be payable (R. S. 1889, sec. 5849).

8. ———: ———: **PLEADING.** In pleading fraud in obtaining an insurance policy, an answer is insufficient which contains no alle-

gation that defendant would not have issued the policy had it known the real state of the facts represented by the assured in his application for insurance (Christian v. Ins. Co., 143 Mo. 460, followed).

9. **Instructions:** FACTS CONSTITUTING FRAUD MUST BE STATED IN PETITION. Facts constituting a defense of fraud must be stated, and if not stated constitute no proper basis for an instruction submitting the issue of fraud.

10. ————: ————: ANSWER: GENERAL ALLEGATION OF FRAUD IN AN ANSWER, EFFECT OF. A general allegation of fraud in an answer accompanied with specifications of the facts, must be limited to the terms of the specifications (McCarty v. Hotel Co., 144 Mo. 397, followed).

11. **Practice, Trial:** HARMLESS ERROR IN ADMITTING TESTIMONY. Where the court sustains an objection to testimony but later permits the same witness to tell all he knows on the subject of the question, the first ruling, if erroneous, is harmless.

12. ————: ————. Where an objection to a question is sustained and the party offering testimony does not advise the trial court of the facts which the excluded question is expected to develop, the ruling is no ground for reversal.

13. ————: ————: NEW TRIAL: NEWLY DISCOVERED EVIDENCE. The power to grant a new trial for newly-discovered evidence rests in the sound discretion of the trial court. Unless an abuse of that discretion is shown, the granting or refusal of a new trial on that ground. will not be reversed. The refusal of a new trial in this case is held no abuse of discretion.

14. ————: ————: REASONABLE DILIGENCE MUST BE SHOWN. A party applying for a new trial on the ground of newly-discovered evidence must show reasonable diligence to obtain the testimony in question at the proper time.

15. ————: ERROR INVITED BY PARTY. A party can not complain of error which he has invited.

16. ————: INSTRUCTION TOO FAVORABLE TO LOSING PARTY, NOT ERROR. An instruction which is too favorable to the losing party can not be made the basis of a reversal. Such error is harmless.

17. ————: JUDGMENT NOT REVERSED UNLESS ERROR AFFECTS MERITS OF CASE. No judgment should be reversed un-

less the error assigned materially affects the merits of the action (R. S. 1899, sec. 865).

18. **Fraud: ACTION: DEFENSE: MISREPRESENTATION.** Intentional fraud is essential to an action or defense of deceit or misrepresentation.

Appeal from St. Louis City Circuit Court.—*Hon. William Zachritz,* Judge.

AFFIRMED.

*C. M. Napton* for appellant.

(1) The instructions are inconsistent and conflicting. Those given for plaintiff are erroneous. 2 Patt. Compl. Dig., p. 1755, sec. 330, and numerous cases cited. (2) The motion for a new trial should have been sustained on the ground of newly-discovered evidence. Longdon v. Kelly, 51 App. 573. (3) The court erred in ruling upon the admission and exclusion of evidence.

*George H. Williams* for respondent.

(1) The instructions for plaintiff are properly based on section 5849, Revised Statutes 1889 (sec. 7890, R. S. 1899), and conforms to the construction given to that section in Ashford v. Life Ins. Co., 80 Mo. App. 638; Van Cleve v. Union Cas. & S. Co., 82 Mo. App. 668; Dean v. Life Ass'n, 86 Mo. App. 459; Christian v. Ins. Co., 143 Mo. 460. (2) The instructions given on behalf of defendant did not properly state the law under the pleadings and proof. This is self-invited error of which defendant can not complain. Flowers v. Helm, 29 Mo. 324; Baker v. Railroad, 122 Mo. 533; Christian v. Ins. Co., 143 Mo. 460. (3) The motion for a new trial on the ground of newly-discovered

evidence was properly overruled because it was not evidence
—the alleged evidence newly-discovered was hearsay and,
therefore, incompetent. Goodwin v. Life Assur. Soc., 97
Iowa 226; Life Ass'n v. Winn, 96 Tenn. 224; Schwarzbach
v. Protective Union, 25 W. Va. 622; Edington v. Life Ins.
Co., 5 Hun. 1; Life Ass'n Co. v. Cheiver, 36 Ohio St. 201.
The alleged evidence was not newly-discovered evidence, i.
e., "since the trial." "Since the trial" means after the close
of the trial. Abbott's Trial Brief, p. 405; 21 Enc. Pl. &
Pr., p. 957; Hill v. State, 41 Tex. 253. The affidavit did
not disclose any diligence. It is not shown that the court did
not exercise a sound discretion. Longdon v. Kelly, 51 Mo.
App. 573.

BARCLAY, J.—This action is upon an insurance pol-
icy for three thousand dollars, issued by defendant on the
life of Dr. Summers, plaintiff's husband, in November, 1898.
He died by his own hand, in June, 1899. Plaintiff brought
suit in the ordinary form for the amount of the policy, shortly
afterwards.

The defenses put in by the answer were:

First. That the policy was issued upon conditions and
warranties which deceased did not fulfill or keep.

Second. That Dr. Summers committed suicide within
two years from the issuance of the policy. The terms of the
policy excluded suicide within that period from the risks in-
sured against.

Third. That certain misrepresentations had been made
by Dr. Summers in his application for insurance, and that
his death was directly attributable to the facts forming the
subject-matter of the misrepresentations. The statements
designated as misrepresentations were replies of Dr. Summers
contained in the application for insurance as follows:

"Have you ever used alcoholic stimulants, opium or

narcotic; wine or malt liquors, or tobacco to any excess.    If so, when and for how long?    Give particulars.    A.   *No.*

"Give full particulars of any illness you may have had since childhood and name of medical attendant or attendants? A.   *No illness.*

"Name and residence of your usual medical attendant. A.   *Dr. Briggs.*

"When and for what have his services been required? A.   *Not required.*"

Each of these answers of the insured the defendant alleges was not true.    But there was no allegation concerning any of those answers charging that the insured knew the answer to be untrue, or that he had made such statement as an inducement to, or for the purpose of, obtaining the insurance in question. The only hint toward such a charge is found at the close of the answer in the following language:

"Defendant states that the validity of said policy was dependent upon the truth of said answers, and they were untrue.    That the insured was cast into despondency by the use of alcohol and narcotics and while so despondent, committed suicide, and his death was directly attributable to the facts above misrepresented.

"And the defendant now here pays into court the sum of $93.87, the total premiums paid, for the benefit of plaintiff, and states that said policy was obtained by fraud and misrepresentation, as above pleaded.

"Wherefore defendant prays to be dismissed hereof with its costs."

Plaintiff's reply contained a denial of the affirmative defenses, with a plea of estoppel, based on the relation between Dr. Summers and Dr. Briggs.    The latter was medical examiner for the defendant when he attested the application in question as a witness.    In view of the result reached

on this appeal it will not be necessary to give further particulars of the plea of estoppel, or to determine its sufficiency.

The case was tried before Judge ZACHRITZ and a jury. Verdict and judgment were given for plaintiff for the amount of the policy and interest ($3,065.58).

Plaintiff's testimony consisted of the policy, of proofs of death and of the payment of the premiums as required.

The death of Dr. Summers was admitted by the answer, as were also the plaintiff's relation to the deceased and the corporate character of defendant.

The learned trial court struck out the defense based upon the suicide of Dr. Summers within two years from the date of the policy. No point is made in this court upon that issue. Defendant concedes that, under the statute law of this State (where it may be inferred the policy was delivered) suicide of the assured constitutes no defense to such an action without proof that the assured "contemplated suicide at the time he made his application for the policy," despite any agreements in the policy on that subject (R. S. 1889, sec. 5855, which in this respect is the same as section 7896, R. S. 1899). No testimony was offered to bring this case within the exceptional facts mentioned in that statute.

The substance of the testimony for defendant on the issue of misrepresentation is that Dr. Briggs was called by the plaintiff, without the knowledge of her husband, to see the assured, Dr. Summers, in the spring of 1899. He found that Dr. Summers had no real illness but was hypochondriacal. Dr. Briggs had heard a report that Dr. Summers used some form of stimulation; so he gave him anti-narcotine, without informing the patient of the nature of the treatment.

Some rulings on particular parts of testimony will be noted later in conjunction with our comment thereon.

The first instruction given for plaintiff authorized a verdict in her favor (after a finding of the preliminary facts of

issuance of the policy, relationship of plaintiff, payment of premiums and proof of death), unless the jury found from a preponderance of the evidence that the insured had misrepresented facts called for by the questions recited in the answer, and that said facts (or some of them) "actually contributed to the death of the insured."

It may be better to quote said instruction at large in order to fully impart its meaning:

"If the jury believe from the evidence that the defendant issued to Thomas O. Summers its ordinary life policy of insurance, offered in evidence, and if the jury believe from the evidence that the plaintiff herein, Clara M. Summers, is the widow of said Thomas O. Summers and is the person named as beneficiary in said policy, and if they further believe from the evidence that the said Thomas O. Summers paid to the defendant all premiums due said defendant under said policy during his life, and that the proofs of the death of said Thomas O. Summers were made to the home office of defendant in the manner and to the extent required by blanks furnished by the defendant, then the court instructs the jury that they must find a verdict for the plaintiff unless the jury shall (in the manner explained in instruction 2) believe from a preponderance of the evidence that the insured had, prior to the issuance of said policy, used alcoholic stimulants, opium or other narcotics, to excess, and that an excessive use of alcoholic stimulants, opium or other narcotics prior to the issuance of said policy (even if the jury find that it existed), actually contributed to the death of the insured, or unless the jury shall (in the manner explained in instruction 3) believe from a preponderance of the evidence that the insured had (prior to the issuance of said policy) a serious illness arising from the use of morphine and opium, and that such serious illness (if the jury shall believe from the evidence it actually occurred) had actually contributed to the death of the insured. Or unless the jury shall

(in the manner explained in instruction 4) believe from a pre-ponderance of the evidence that the insured had, prior to the issuance of said policy, been treated by his family physician for the morphine or opium habit and alcoholism, and that said morphine or opium habit and alcoholism, prior to the issuance of said policy (if the jury find that it existed) had actually contributed to the death of the insured."

Other instructions were given for plaintiff. They need not be recited.

The defendant's instructions given by the court were as follows:

"1.   The court instructs the jury that if they believe and find from the evidence that, when the insured applied for the insurance, he falsely and fraudulently answered questions therein as to having used alcoholic stimulants, opium or other narcotics and said false answers were so made for the purpose of securing said insurance, then they will find for the defend-ant.

"2.   The jury are instructed that if they believe and find from the evidence that the insured, when he obtained said in-surance, falsely and fraudulently answered questions therein asked him as to any illness he had ever had, and said false and fraudulent answers were made for the purpose of obtaining said insurance, and the same would not have been issued if the insured had told the truth, they they will find for the defend-ant.

"3.   The jury are instructed that if they believe and find from the evidence that the examining physician of the com-pany, and the insured, fraudulently connived together to pro-cure said insurance, and the same was obtained by reason of their fraudulent acts, then they will find for the defendant."

After the verdict for plaintiff, defendant moved for a new trial on a number of grounds, some of which will be mentioned later in our discussion of the assignments of error.

I.   The first claim of error is that the instructions are conflicting.   The principal point of conflict assigned is that the first instruction given for defendant can not be harmonized with the first instruction for the plaintiff.   The defendant's said instruction authorized the jury to find for defendant if they believed from the evidence that when the insured applied for insurance he falsely and fraudulently answered the questions touching his use of alcoholic stimulants, opium or other narcotics, and that said answers were falsely made for the purpose of procuring the insurance.

Let us, for the moment, concede that this instruction is in conflict with the first instruction for the plaintiff, which required a finding that any fact misrepresented by the insured actually contributed to his death!

The difficulty which defendant encounters on invoking the admitted general rule that conflicting instructions are erroneous lies in the qualification of that doctrine, equally well recognized, which declares such conflict to be harmless where it is erroneously favorable to the complaining party.   Francis v. Railroad, 127 Mo. 658; Reardon v. Railroad, 114 Mo. 384.

We are of the opinion that the court, in the present case, should not have given the instruction for defendant above mentioned.   The condition of the record precluded the submission of the issue that the insurance was procured by fraud.

It is undoubted law that an insurance obtained by any fraud remediable under the principles of law or equity may be avoided on proper pleading and proof of the facts constituting the fraud.   Ashford v. Ins. Co., 80 Mo. App. 638; White v. Ins. Co., 4 Dill. 177; Smith v. Society, 123 N. Y. 85.

Our statutes touching misrepresentations (R. S. 1899, sec. 5849, and R. S. 1899, sec. 7890) do not abrogate that defense.   The opinion of the second division of the Supreme Court in Christian v. Ins. Co., 143 Mo. 460, proceeds on the theory that such defense is tenable on a proper showing.   But

it is perfectly clear in the case at bar that there was no suffi-
cient allegation of any fraud on the part of the assured, under
the decision last above cited.    There is no allegation or charge
that any of the answers of Dr. Summers was known to be false
to the insured, or was not known to be true.

The peculiar circumstances of the professional attendance
of Dr. Briggs upon his friend and patient, the insured, in the
summer of 1899, were explained by the former who testified
as a witness for defendant.    He said, in substance, that he
called to see Dr. Summers at the instance of his wife, the plain-
tiff, and gave him some treatment on the theory that he was
nervous from some sort of stimulation; but he did not inform
Dr. Summers of the nature of the treatment, further than that
it was intended to relieve the nervous condition.

There was no testimony before the trial court tending to
prove that any answer of the insured to the questions pro-
pounded was knowingly false; that any bad faith, actual or
constructive, marked his conduct in obtaining the policy.

Fraud on the part of the person obtaining the insurance
would vitiate the policy without regard to any participation in
the fraud on the part of the beneficiary whose rights must
depend on the integrity of the contract of insurance.    Carpen-
ter v. Am. Ins. Co., 1 Story 57; Burrus v. Life Ass'n, 96 Va.
543.    But no such fraud was here alleged.    The facts consti-
tuting any supposed fraud are not so stated as to constitute a
defense under the ruling of the Supreme Court in Reed v. Bott,
100 Mo. 62, and the later ruling in Bank v. Rohrer, 138 Mo.
380.

Intentional fraud is essential to an action or defense of
deceit or misrepresentation.    Kountze v. Kennedy, 147 N. Y.
124; Bank v. Beebe, 6 Ohio 497; Fidelity Ass'n v. Jeffords,
107 Fed. 402, 53 L. R. A. 193.

The latest expression of the views of the Supreme Court
on this point indicate that an answer which "contains no alle-

gation that defendant would not have issued the policy had it known the real state of the facts respecting which the answers were made," is not sufficient to raise an issue of fraud in obtaining the policy. Christian v. Ins. Co., 143 Mo. 464.

The learned trial court should not have given the first and third instructions requested by defendant, founded on a supposed issue which was not in the case.

The closing passage of the answer does, indeed, in a general way, charge "fraud and misrepresentation;" but it adds "as above pleaded," the effect of which language is to limit the meaning of the general charge to the facts already recited. This is the general rule in Missouri when a pleading makes some broad allegation of fault or wrong, followed by specifications thereof. The Supreme Court, in such a case, limits the scope of the general charge to the terms of the specifications thereof. Waldheir v. Railroad, 71 Mo. 514; McCarty v. Hotel Co., 144 Mo. 64. So we must accordingly do in the present case. There was no sufficient allegation or proof of fraud in obtaining the insurance to warrant the instructions given for defendant on that subject.

It is error to give an instruction calling for the finding of a fact which the testimony does not tend to prove. O'Fallon v. Boismenu, 3 Mo. 405; O'Brien v. Loomis, 43 Mo. App. 29. It is equally error to give an instruction having no foundation in the pleadings, where there has been no waiver of such omission.

But a party can not complain of error which he has invited. Cravens v. Ins. Co., 143 Mo. 468; Young v. Hutchinson, 62 Mo. App. 512.

Nor may an erroneous instruction, given at the instance of a losing party at the trial, be made the foundation for a claim of conflict with a correct instruction given for the prevailing suitor. Precedents already cited sustain and vindicate

that wholesome rule.    We need not pause long to add reasons in
its support.    It is but a subordinate precept of the larger rule
of modern practice which ordains that no judgment shall be
reversed unless error was committed by the trial court "against
the appellant or plaintiff in error and materially affecting the
merits of the action"    (R. S. 1889, sec. 2303; same as sec.
865, R. S. 1899).    An error in instructing too favorably for
the losing party in the trial court is not an error available to
that party to secure a reversal of a judgment which ensued
despite the error, because no harm was done thereby to the
complaining party.

II.    The second instruction given for defendant was
erroneous in so far as it attempted to submit the issue of fraud;
and it was erroneous in so far as it was designed to frame an
issue on the question of misrepresentation, because it omitted
the important qualifications demanded by the Missouri statute
on that subject (R. S. 1889, sec. 5849).

Defendant appellant therefore had no standing to com-
plain of any conflict between its second instruction and the
first instruction for plaintiff, for the reasons stated in the pre-
ceding paragraph of this opinion.

III.    Some rulings on testimony have been assigned as
errors:

a.    Defendant complains that the court sustained an ob-
jection to a question propounded to Dr. Briggs, viz.:

"Now, was Dr. Summers a drinking man?"

The ruling turned out to be innocent, for the court imme-
diately afterwards allowed the witness to give all he knew on
that subject, as will be seen from the questions and answers
which followed the ruling:

"Q.    Was he a man who drank alcoholic, malt or vinous
liquors?    A.    Not of my own knowledge; there was no ex-
ternal evidence of it.

"Q.    What is it?    A.    Not of my own knowledge; there

was no evidence either in his mental capacity or otherwise that I ever saw.

"Q.　Did you ever see him take a drink?　A.　No, sir."

The ruling was therefore without prejudice to defendant. We are neither at liberty nor disposed to reverse any judgment for error assigned which appears to have been harmless, as such an error has been held to be.　State v. Sansome, 116 Mo. 1; Speer v. Burlingame, 61 Mo. App. 75; Wright v. Brown, 68 Mo. App. 577.

*b.*　Several other rulings, excluding answers to questions, are challenged by defendant's assignments of error here. Where those rulings appear to relate to any substantial matter they all fall under the ban of the practice rule which requires a party in such a situation as defendant, to put into the record in somewise a satisfactory showing of the testimony which the excluded inquiry is expected to educe. In default of such a showing, the rule can not be made a ground for reversal.

That rule has been so clearly declared by decisions in Missouri that further discussion of it is needless.　State ex rel. v. Leland, 82 Mo. 260; Aull Bank v. Aull's Admr., 80 Mo. 199; State v. Martin, 124 Mo. 514.

IV.　Defendant complains, furthermore, that the trial court did not grant a new trial on the ground of newly-discovered evidence. The evidence was communicated to counsel for defendant during the trial, after the testimony had been announced as closed. Defendant's counsel had finished his argument, and the plaintiff's counsel was delivering his final address to the jury.

The testimony itself consisted of a sworn statement by Dr. Pfingsten that, prior to the date of this insurance, he was a student attending lectures on anatomy by Dr. Summers, at the St. Louis College of Physicians and Surgeons, and heard Dr. Summers tell his class, after an absence of about a week, that he had been engaged meanwhile in an effort to break himself of

the morphine habit, to which he stated he had been addicted; that he said he had taken the "sudden cure," not the gradual one, and was completely cured; that it had been previously apparent to affiant that Dr. Summers was addicted to the use of some stimulant, either liquor or morphine.

This testimony was not called to the attention of the court before the case was submitted to the jury. No request was made of the court to reopen the case or to permit the testimony in question to be heard, until after the verdict was rendered. Knowledge of the testimony reached defendant's counsel, as above narrated, through defendant's district superintendent who had been told those facts by Dr. Pfingsten, shortly after the death of Dr. Summers. Not knowing of the Summer's insurance (which was not in said superintendent's district) the superintendent had not immediately imparted the information to the attorney of the company. But when he saw in the daily newspapers an account of the trial in progress in this case, he hastened to the courthouse and advised the company's attorney of the testimony above outlined, as the case was about to close in the manner already indicated.

We do not consider it necessary to decide whether the new testimony was competent, or whether the application to admit it came too late, in the circumstances described.

It is settled law in this State that an appellate court will not reverse on the ground of newly-discovered testimony, unless the trial court has abused the discretion with which it is invested in dealing with that subject. Merchants, etc., Co. v. Curran, 45 Mo. 142; Cook v. Railroad, 56 Mo. 380; State v. Smith, 65 Mo. 313; Mayor v. Burns, 114 Mo. 426.

Parties are required to use reasonable diligence to obtain testimony to support their contentions and to submit it to the triers of fact at the proper time. Folding Bed Co. v. Railroad, 148 Mo. 478; Stephens v. Gallagher, 42 Mo. App. 245. The facts disclosed in this case do not convince us that the

learned trial court was guilty of any abuse of discretion in the ruling mentioned. That court might fairly have concluded that reasonable diligence was not used in investigating and bringing forward the facts now claimed to be material. Whatever might be our independent judgment on that point, we are satisfied that the conclusion of the learned circuit judge involved no abuse of discretion, and, therefore, furnishes no ground for a reversal of the judgment.

V. No other points of error assigned appear to require remark.

The judgment is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.