THE NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES, Appellant, *v.* PHILIP MINCH, Administrator, etc., Respondent.

The rule which charges a principal with the knowledge of his agent is for the protection of innocent third persons. If a person colludes with an agent to cheat the principal, the latter is not responsible for the act or knowledge of the agent.

A breach of any warranty in an application for a policy of life insurance must be insisted upon by the insurer, when a claim is made for the execution of the contract, or it will be deemed to have been waived. Mere ignorance of a fact which would have enabled a company to defend on account of such breach, is not such a mistake of fact as will enable it to recover back money paid upon the policy.

In order to maintain such an action, fraud in obtaining the policy, which was unknown to the plaintiff at the time the money was paid, or fraudu-

lent representations made to obtain the money, which were designed to and did have the effect of preventing inquiry, must be proved.

It is sufficient to establish by direct evidence, or by circumstances from which the jury may infer it, that the policy was obtained by fraud for which the insured was chargeable alone, or in connection with others.

So if it be obtained by the fraud of an agent of the insured, the benefit of the fraud cannot be retained and the party be relieved from the fraudulent means by which it was obtained.

(Argued May 7, 1873 ; decided June 10, 1873.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, in favor of defendant, entered upon an order denying a motion for a new trial, and directing judgment on a nonsuit.

This action was brought to recover of the defendant, *as* administrator, etc., of Anna C. Minch, $2,500 and interest, as damages suffered by the plaintiff by reason of a conspiracy and fraudulent representations, whereby the plaintiff was induced to insure the life of the deceased, and to pay the loss after her death. The complaint alleged in substance that about the 17th day of March, 1869, the deceased, being at the time incurably diseased with a cancer, with her husband and Dr. Potter, combined and confederated together to deceive, cheat and defraud the plaintiff out of $2,000 by procuring an insurance upon her life for that amount. That for the purpose they did, orally and in writing, falsely and fraudulently represent to the plaintiff, in applying for a policy of insurance upon her life, that she had not had, and did not then have any serious illness, etc., and that she was then, in all respects, a first-class healthy risk, and safely insurable. That such representations were false and fraudulent, to the knowledge of the said deceased, her husband and said Potter, and were made with intent to deceive the plaintiff. That plaintiff, its officers and agents, then believed the said representations to be true, relied thereon, and were deceived thereby. That *thereupon*, in consideration of said representations and of the premium, the plaintiff duly issued its contract or policy of life insurance to the said Anna C. Minch, insur-

ing her life in the sum of $2,000. That after her death (on the 8th of July, 1869), in pursuance of the fraudulent combination and purposes aforesaid, her said husband and said Potter falsely and fraudulently represented to the plaintiff that the cause of her death was pneumonia or inflammation of the lungs, and not any other disease. That the plaintiff, believing these representations to be true, relied thereon and was deceived thereby, and thereupon, after due notice and proof of her death on or about the eleventh day of September, 1869, paid to the defendant, as administrator, etc., the amount insured.

The facts and evidence upon the trial, so far as pertinent to the questions discussed, appear sufficiently in the opinion.

The court nonsuited the plaintiff. Exceptions were ordered to be heard at first instance at General Term.

*N. C. Moak* for the appellant. Plaintiff was entitled to judgment according to the facts proven, whether demanded in the complaint or not. (*Hale* v. *Omaha, etc.,* 49 N. Y., 626, 631 ; *Armitage* v. *Palmer,* 37 id., 404 ; *Davis* v. *Davis,* 36 id., 569 ; *Emery* v. *Pease,* 20 id., 62 ; *Wood* v. *Brown,* 34 id., 337 ; *Cuff* v. *Dorland,* 55 Barb., 482, 496 ; *Whitney* v. *Whitney,* 49 id., 323 ; *Eno* v. *Woodsworth,* 4 Comst., 249, 252, 253 ; *Connaughty* v. *Nichols,* 42 N. Y., 83 ; *Austin* v. *Rawdon,* 44 id., 63 ; *Bass* v. *Comstock,* 38 id., 21 ; *Anderson* v. *Hill,* 52 Barb., 238 ; *Henderson* v. *Jackson,* 9 Abb. [N. S.], 293.) The complaint alleged sufficient to establish a warranty that the representations were true and to entitle plaintiff to recover back the money it paid on the policy. (*Smith* v. *Ætna Ins. Co.,* 49 N. Y., 211.) The jury had a right to find, from the surrounding circumstances, that the insured had knowledge of the fraudulent attempt to obtain the policy. (*Storm's Case,* 1 City Hall Rec., 169 ; *Rex* v. *Cope,* 1 Stra., 144 ; *Rex* v. *Murphy,* 8 Carr. & P., 297, 309, 310 ; *U. S.* v. *Cole,* 5 McL., 513, 601, 602 ; 2 Bishop's Crim. Pro. [2d ed.], § 227 ; *Taylor's Case,* 1 City Hall Rec., 192.) The husband having acted as agent for the wife in the trans-

action, she is bound by his fraudulent acts. (Kerr on Frauds, 114 Am. ed ; *Sharp* v. *Mayor*, 25 How., 396 ; *Graves* v. *Spier*, 58 Barb., 349, 370, 371, and cases cited, 386, 387 ; *Olmsted* v. *Hotaling*, 1 Hill, 317, 318 ; *Griswold* v. *Haven*, 25 N. Y., 600–603 ; *Ex. Bk.* v. *Monteath*, 26 id., 509 ; *Crans* v. *Hunter*, 28 id., 390, 393 ; *Cobb* v. *Downs*, 10 id., 345, 346 ; *Warner* v. *Warren*, 46 id., 228 ; *Thompson* v. *A. T. Lf. and S. Ins. Co.*, id., 674.) The insured cannot retain the policy and its fruits and insist that she is not concluded by the means used to obtain it. (*Harris* v. *Story*, 2 E. D. S., 367 ; *Clem* v. *N. and L. R. R. Co.*, 9 Ind., 488 ; 18 U. S. Dig., 298, § 314 ; *Schmidt* v. *Hurfurth*, 5 Rob., 124 ; *Jackson* v. *Corey*, 12 J. R., 429 ; *Hunter* v. *Walters*, L. R., 11 Eq., 292 ; *School Com.* v. *Kesler*, 67 N. C., 443 ; Bliss on Lf. Ins., 108, 460, 461 ; *Vose* v. *Eagle*, etc., 6 Cush., 42 ; *Union Bk.* v. *Mott*, 39 Barb., 183.) The representations of defendant in obtaining the money were made as administrator of Mrs. Minch, and her estate is liable for them. (2 Wms. on Exrs., 1565, 1566, 1607.) It is no defence that plaintiff had the means of ascertaining the truth, or that he omitted to use vigilance or care by which the mistake could have been avoided. (*Kingston Bk.* v. *Eltinge*, 40 N. Y., 391 ; *Union*, etc., v. *Sixth*, etc., 1 Lans., 13 ; 43 N. Y., 452.)

*J. M. Carroll* for the respondent. Plaintiff must show that it was induced to pay the loss by fraudulent representations. (*Life Ins. Co. of N. Y.* v. *Wager*, 27 Barb., 354, 367–369.) The insured did not know what representations were in the application, and could not be affected by them as fraudulent. (*Rawle* v. *Am. Lf. Ins. Co.*, 36 Barb., 357, 366 ; *Wall* v. *Howard Ins. Co.*, 14 id., 383.) The knowledge of plaintiff's agent, acquired in the discharge of his duty, was the knowledge of plaintiff. (*Valton* v. *Loan Fund Assurance Soc.*, 1 Keyes, 21 ; *Bk. of U. S.* v. *Davis*, 2 Hill, 451, 461 ; *Masters* v. *Madison Co. Ins. Co.*, 11 Barb., 624, 630, 632 ; *Hodgkins* v. *Mont. Co. Ins. Co.*, 34 id., 213, 215 ; *Ames* v. *N. Y. Ins. Co.*, 4 Kern., 253, 263.) An omission by the

insured to state matters not called for by the questions put to her would not be a concealment, and would not vitiate the policy. (*Rawle* v. *Am. Ins. Co.*, 36 Barb., 257, 367; S. C., 27 N. Y., 282, 295.) Even an erroneous answer might not have that effect. (*Hodges* v. *Guard. Lf. Ins. Co.*, 4 Abb. [N. S.], 346, 351.) The allegations of the complaint of conspiracy and fraud cannot be rejected as surplusage, and plaintiff cannot be allowed to recover upon contract for breach of warranty. (Code, § 171; *Walter* v. *Bennett*, 16 N. Y., 250; *Whitcomb* v. *Hungerford*, 42 Barb., 178; *Ransom* v. *Wetmore*, 39 id., 104.) The only warranty that could be available to plaintiff would be a special warranty that the known defect should not produce some particular injury. (*Bidwell* v. *N. W. Ins. Co.*, 24 N. Y., 304, 392; *Rawley* v. *Em. Ins. Co.*, 3 Keyes, 554, 557, 560, 561; *Schuyler* v. *Ross*, 2 Caines' R., 202.) A general exception by plaintiff to the nonsuit does not reach the question of fraud or false representations, and is not available. (*Seymour* v. *Cowing*, 1 Keyes, 532, 534; *Mallory* v. *Tioga R. R. Co.*, 5 Abb. Pr. [N. S.], 420, 424; *Winchell* v. *Hicks*, 18 N. Y., 558, 565.)

CHURCH, Ch. J. I am unable to concur with the ruling of the learned judge at the circuit, which was sustained by a majority of the court at General Term, that there was not evidence sufficient to go to the jury to charge fraud or conspiracy upon the deceased in obtaining the policy. A conspiracy was alleged between the deceased, her husband and Dr. Potter, the medical examiner for the plaintiff, to fraudulently obtain a policy of insurance upon the life of Mrs. Minch, knowing that she had, at the time, a cancer, which was an incurable disease. It was not necessary to establish the conspiracy against the three. It was sufficient to establish that the policy was obtained by fraud, for which the deceased was chargeable alone, or in connection with others, and this might be done by direct evidence, or by circumstances from which a jury could reasonably infer it.

The application contained the questions whether she had

had any serious illness, local disease or personal injury, and whether she had then, to the best of her knowledge or belief, any disorder, or any infirmity or weakness tending to impair her constitution, to all of which the answer was in the negative. There was evidence tending to show that she had, at the time, a cancer in her breast, which she was aware of, and of which she afterward died. There was conflicting evidence as to the fact of a cancer, and also as to whether the deceased knew it, which should have been submitted to the jury. The fact that she signed the application, that she was examined by Dr. Potter for the purpose of making the medical certificate, her constant communication with her husband, who, with the doctor, was active in making the application and procuring the policy, and other circumstances, were pertinent to go to the jury, upon the question of her knowledge of the general fact that an insurance was being effected upon her life, and, also, of the substance of the application which she had signed. It is true there was evidence tending to show that the application was not, in fact, read over to her, and that she did not know what it contained, but her ignorance of its nature was far from being conclusively proved.

Again, if the husband, as the agent of the wife, procured the policy by fraud, she cannot retain the benefit of it and be relieved from the consequences of the fraudulent means by which it was obtained. It is established that an innocent principal cannot take an advantage resulting from the fraud of an agent, without rendering himself civilly liable to the injured party. (10 N. Y., 34; *Graves* v. *Spier*, 58 Barb., 349.) If the husband obtained the policy by a fraud, acting as the agent of his wife, he occupies the position of claiming to keep money, as her legal representative, which he fraudulently obtained as her agent. He is defending this action upon her title to the policy, which, if procured by his fraud, is invalid.

The court also erred in refusing to allow the plaintiff to go to the jury upon the question, and to charge them that if from the evidence they believed it was known by the

husband, Dr. Potter and the deceased that she had a cancer, which was incurable, and that there was an understanding between them that they were to obtain an insurance upon her life, at the time knowing she was incurably diseased, the plaintiff was entitled to recover. The defendant was a laborer in a saw-mill. This insurance and another were procured upon the life of his wife, at the suggestion of his employer, whose wife was the certifying friend. The medical examiner was a brother-in-law of the employer, who first applied to the agent about a policy, and accompanied the husband afterward to the agent on the same business, and there is evidence that he procured the signature of the deceased to the application. He had attended the deceased as a physician, and, it is claimed, treated the disease as a cancer. It is also claimed that the defendant and his wife went to Rome the fall before to consult a cancer doctor under his advice, and there was other evidence proper for the jury tending to show that all those persons supposed and believed that the deceased had a cancer at the time of the policy, and also that she in fact died with that disease about three months afterward. If Dr. Potter, the husband and deceased knew that the latter had an incurable cancer, and acted in concert in procuring the policy, the plaintiffs were entitled to recover. Even if the company would otherwise be chargeable with the knowledge of Dr. Potter as their agent, they would be relieved from it under such circumstances. If a person colludes with an agent to cheat the principal, the latter is not responsible for the acts or knowledge of the agent. The rule which charges the principal with what the agent knows is for the protection of innocent third persons, and not those who use the agent to further their own frauds upon the principal. If Dr. Potter did not know that the cancer existed, and did not collude with the deceased or her husband, as he testified, then he is innocent of any wrong, and the plaintiff is not injured; and if he did, the defendant is not to be injured by his guilty knowledge. It is not intended to intimate an opinion upon the facts or any of them; the evidence was conflicting

as to nearly all of them. All that we intend to say is that it was not a case for a nonsuit. It should have been submitted to the jury. The court should not nonsuit a plaintiff except in cases where a verdict would be set aside as against evidence. This is not such a case.

It is unnecessary to characterize this action as one in contract or for fraud. In either aspect we think fraud must be established in obtaining the policy which was unknown to the plaintiff when the money was paid. The alleged fraudulent statement of the cause of death is pertinent mainly not as constituting a substantive cause of action, but as evidence of the original fraud and as a circumstance calculated to prevent inquiry. A policy of insurance is an executory contract. The time for insisting upon the breach of any warranty contained in the original application was when the claim was made for the execution of the contract. Mere ignorance of a fact which might have enabled the company to defend an action upon the policy on account of such breach is not such a mistake of fact as will enable it to recover back the money. It will be presumed that the company either knew the fact or intended to waive any such defence, and voluntarily paid the money. Otherwise there would be no end to controversy and litigation, and the party receiving the money would hold it subject to a lawsuit until the statute of limitations intervened. This rule has no application except in the absence of fraud in procuring the policy and of fraudulent representations made to obtain the money, which were designed to, and did have, the effect of preventing inquiry. (Phillips on Ins., 593; Angell on Fire and Life Ins., § 409; 27 Barb., 354.) SUTHERLAND, J., in the last case, says: "In this action they must be deemed by the payment to have settled or waived all questions of law or of fact, as to the validity of the original contract, except fraud, which they had the means of raising when they paid the loss." (1 Wend., 357; 1 Esp., 279; 20 J. R., 196.) The pleader evidently took this view in preparing the complaint, and I think he was right.

The judgment must be reversed and a new trial ordered, costs to abide event.

All concur.

PECKHAM, FOLGER and ANDREWS, JJ., in result.