SUPREME CONCLAVE KNIGHTS OF DAMON *v.* O'CONNELL, and *vice versa.*

1. Where the main issue in the trial of an action upon a benefit certificate of life-insurance was whether or not the deceased had, for the purpose of procuring the certificate, practiced upon the association issuing it such a fraud as would render the same void, and there was evidence warranting a finding in the defendant's favor upon this issue, it was erroneous to direct a verdict for the plaintiff.
2. An entry upon the minutes of another association to which the deceased had applied for a benefit certificate was not, in such a trial, admissible against the plaintiff, it not being shown that the deceased had anything to do with the making of this entry.
3. Admissions or declarations by the holder of a benefit life-insurance certificate, made before it was issued and affecting its validity, are admissible against the person therein named as beneficiary, when the latter has no vested interest in the contract evidenced by such certificate, and it is, under the terms thereof, within the power of the holder at any time before his death to designate another person as the beneficiary.

Argued February 16,—Decided March 18, 1899.

Action on insurance policy.·   Before Judge Felton.   Bibb superior court.   April term, 1898.

*Hall & Wimberly* and *A. W. Lane*, for Supreme Conclave.
*Hardeman, Davis & Turner*, contra.

LUMPKIN, P. J.   This was an action by Mrs. Mary O'Connell against the Supreme Conclave Knights of Damon.   At the April term, 1896, of the superior court of Bibb county, there was a verdict against her, and this court, at the March term, 1897, granted her a new trial.   See 102 *Ga.* 143.   At the trial now under review the judge directed a verdict in her favor, and the defendant excepted.   The plaintiff, by a cross-bill of exceptions, alleges that the court erred in admitting certain evidence, the nature of which will be presently disclosed.   It appears from the record that the defendant, on the 23d of January, 1893, issued to Cornelius O'Connell, since deceased, who was the husband of the plaintiff, a benefit certificate of life-insurance, promising therein to pay to his wife, Mary O'Connell, on certain conditions, $3,000 upon satisfactory proofs of his death.   This certificate distinctly provided, however, that O'Connell might surrender the same and have another issued in its stead; that is, it gave him the right to name another beneficiary if he saw proper to do so.   At the trial, the defendant introduced in evidence an application of O'Connell for membership in the American Legion of Honor, dated May 22, 1883; also, an application by him for membership in the Royal Arcanum, dated January 14, 1889; also, the following extract from the minutes of the association last named: "Cornelius O'Connell, born September 15th, 1834, between 54 and 55 years of age; Mary O'Connell, wife; Mary, Kate, Edward, Timothy, Cornelius, and Daniel, children."   Also, an affidavit made by O'Connell before W. A. Poe, a justice of the peace, on the 5th day of February, 1889, which was in the following words: "Personally came before me the undersigned, Cornelius O'Connell, who on oath saith that he was born in the County of Limerick, Ireland, on the 15th day of September, 1834."   A comparison of these various documents discloses that the deceased made widely conflicting statements as to the date of his

birth and as to other matters affecting the risk upon his life. Besides this documentary evidence, the defendant introduced a considerable amount of oral testimony tending to show that O'Connell had made on various occasions conflicting statements as to his age.   The main issue in the case was whether or not, in the application for the certificate upon which the present action was based, the representation that the applicant had, to the best of his knowledge and belief, correctly stated his age was false and fraudulent.

1. As will have been seen from the foregoing brief summary of the evidence introduced in behalf of the defendant, the jury would have been well warranted in determining this issue in the defendant's favor.   Manifestly, therefore, the court erred in directing a verdict for the plaintiff.   This disposes of the main bill of exceptions, and we will now deal with the points made by the cross-bill.

2. The court erred in admitting in evidence the entry upon the minutes of the Royal Arcanum.   It does not appear by whom the same was made, or that the deceased had anything to do with the making thereof.   Certainly, then, it could not in any sense be binding upon him or affect any right of his wife arising under the benefit certificate issued by the defendant association.

3. There was, however, no error in admitting in evidence the applications of O'Connell for membership in the Legion of Honor and the Royal Arcanum, or in admitting his affidavit made before Poe.   These documents were objected to on the ground that the admissions or declarations of O'Connell relating to his age, though made before the issuance of the certificate now sued upon, could not be received against his wife for the purpose of invalidating this certificate.   Had this been an action upon an ordinary life-insurance policy evidencing a contract between the insurance company and the beneficiary, it would, according to some authorities, have been erroneous to admit the evidence in question.   See, as illustrations, Penn Mutual Co. v. Wiler, 100 Ind. 92, s. c. 50 Am. Rep. 769; Schwarzbach v. Ohio Union, 25 W. Va. 622, s. c. 52 Am. Rep. 227.   But the principle laid down in these cases, and perhaps

others which might be cited to the same effect, is not, in our opinion, applicable to a case like the present. In this connection we extract the following from Niblack on Accident Insurance and Benefit Societies (2d ed.), § 325, which apparently goes to the extent of declaring that admissions by the holder of a benefit certificate, though made after its issuance, are admissible against the beneficiary, if the holder had the power to name at will another as the person who should claim under the certificate: "In ordinary life-insurance, where the contract is between the company and the beneficiary, where a vested interest passes to the beneficiary and the assured ceases to be a party in interest, it is held that the admissions of the assured after the issuing of the policy are not admissible to defeat the contract. The reason upon which the rule is founded is that, after the contract of insurance is effected, the assured has no such relation to the beneficiary as gives him the power to affect or destroy it by his statements. But in contracts of mutual benefit insurance, where the contract is between the society and the member, where the beneficiary has only an expectant interest, and the member insured has full power and dominion over the contract until the moment of his death, it has been held that the reason for the rule in ordinary insurance does not exist, and that there is no escape from the conclusion that, since the beneficiary has no vested interest in the contract, the member must have dominion over it, and that his declarations are admissible against the beneficiary just as they would be against his legal representatives." The author cites Smith v. National Benefit Society, 123 N. Y. 85, affirming a decision rendered by the Supreme Court of New York, reported in 51 Hun, 575, 4 N. Y. Supp. 521. Even if we should accept as sound, to the full extent indicated in the language above quoted, the rule relating to admissions by the insured which has been applied to cases of ordinary life-insurance, we think it is perfectly clear that this rule, certainly so far as relates to admissions or declarations made before the insurance was obtained, should have no application to contracts like the one with which we are now dealing. It will have been observed that Mrs. O'Connell had no absolute and vested interest

in the benefit certificate issued to her husband, but that he obtained full power and control over it up to the time of his death.

Our attention has been called to the case of Supreme Lodge Knights of Pythias *v.* Schmidt, 98 Ind. 374. The opinion therein was delivered by the Hon. William E. Niblack, and it appears that his conclusion was entirely different from that reached by Mr. William C. Niblack, of the Chicago bar, the author of the text-book from which we have above quoted. It appeared in that case, however, that the admissions of the insured sought to be shown were made subsequently to the issuing of a certificate made payable to a named beneficiary or "to such other person or persons" as the insured might "subsequently direct." Accordingly, it was not decided what effect should be given to statements by the insured made prior to his application for membership in the society. On principle, it would seem that the beneficiary would be bound by the knowledge of the insured, at the time of applying for a certificate, that the representations he made as to his age or as to other matters affecting the risk were false, as such fraudulent representations would have the effect of rendering the contract void ab initio, even considering it as a contract between the association and the beneficiary, effected through the latter's agent. Upon the theory that the insured acts as the agent of the beneficiary in procuring insurance for his benefit, knowledge of the falsity of such representations on the part of the agent would be imputable to his principal; and though after the contract had been effected and the agency had terminated the insured might with much reason be said to have no power to bind the beneficiary by any admissions against the latter's interest, contradictory statements made by the insured prior to making the contract would certainly be competent evidence, not upon the idea that an agent has authority to make in behalf of his principal admissions against the latter's interest, but as tending to show knowledge on the part of the agent that the representations made by him in behalf of his principal to induce the association to enter into the contract were false and fraudulent. It is a well-recognized principle of law that a principal can take no benefit from a contract into which his agent has fraud-

ulently induced a third party to enter; for the principal can not in part ratify and in part repudiate the act of his agent in effecting the contract, and thus relieve himself from responsibility for the wrongful conduct of his agent. It is true that, ordinarily, no agency primarily exists between the insured and the beneficiary in a policy of life-insurance, for generally the insured acts on his own motion and without direct authority from the person in whose favor the company is instructed to issue the policy. But such person can not claim the benefits arising from the contract unless he subsequently ratifies the act of the insured in taking out the policy, in which case the beneficiary becomes bound by any misrepresentations made by the insured, to the same degree as would have been the case had the latter been the accredited agent of the beneficiary at the time the policy was actually issued. In dealing with policies so issued, they are commonly regarded as evidencing a contract between the insurance company and the person named as beneficiary, for the reason that the law will presume the acceptance of a gift or benefit sought to be bestowed by one person on another. Of course, where the beneficiary sues upon such a policy, the courts rightly treat the contract as one, not between the insured and the company, but between it and the plaintiff; for, by seeking an enforcement of the contract, the beneficiary necessarily adopts as his own the act of the insured in taking out the policy. In this connection, see Bishop on Contracts, §§ 1222–1226. In any view of the matter, therefore, we are not prepared to hold that the trial judge committed error in admitting the evidence last above referred to.

*Judgments reversed. All the Justices concurring.*