(76 South. 12)

PACIFIC MUT. LIFE INS. CO. v. HAYES.
(8 Div. 938.)

(Supreme Court of Alabama. June 7, 1917. Rehearing Denied June 28, 1917.)

1. INSURANCE ⊜⟞640(2) — LIFE INSURANCE— SUIT—PLEADING.

In suit on a life policy, plea 3 alleged that insured failed to pay a premium which the policy stipulated he should pay, or else the policy should become lapsed and void, unless it should be reinstated by insured's warranty of good health and condition, that after the policy lapsed and became void insured, to procure reinstatement, executed a warranty that he was at the time in all respects in good, sound, and unimpaired health and condition, that he had not within a year consulted any physician, surgeon, or other practitioner respecting his mental health or condition, and that it was his understanding that the company accepted payment of the premium and issued its receipt in consideration of the warranties made. Defendant further averred that the warranty was breached and the policy rendered void in that insured, when he signed the warranty, was afflicted with heart disease, from which he soon died, and the company tender plaintiff the amount of the premium. Other pleas adopted the averment of plea 3, except as to the breach of warranty, and as to that merely changed the character of the disease. Held, that demurrers to the pleas were properly sustained.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1617, 1618.]

2. INSURANCE ⊜⟞641(1)—LIFE INSURANCE— SUIT—PLEADING.

In such suit, defendant's rejoinder to plaintiff's replication, taken as part of pleas with which it became incorporated, held to present a sufficient issue of fraud in the reinstatement of the policy of insurance, after it lapsed for nonpayment of premium under Code 1907, § 4572, relative to misrepresentation in application or proof of loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1554, 1626, 1628, 1629.]

**3. INSURANCE ⬤ᴖ669(7)—LIFE INSURANCE—INSTRUCTIONS.**

In suit on a life policy, the insurer, defending on the ground that insured had breached his warranty of his state of health when applying for reinstatement after the policy had lapsed, requested the court to charge that though insured may not have known that he had heart disease when he signed the warranty, yet if he did know that he was sick, and if he knew that he recently or since his original examination consulted with a physician, and if he did know that he was really sick when he did so, it was his duty to have correctly stated that he did consult a physician, and if he failed so to do his 'failure was a misrepresentation and concealment of a matter tending to increase the risk of loss, and verdict must be for defendant. Defendant also requested the charge that if the jury found insured did not pay the premium on the day it was stipulated for, and if they believed that insured executed the alleged warranty, and further believed that he tendered to defendant the premium due on the policy, and that defendant accepted the premium, and if they further believed that insured was then sick and knew it, or that he had consulted a physician, and defendant did not know he was sick, and that he had consulted a physician, verdict must be for defendant. *Held,* that the instructions were properly refused as not complying with the rule that a mere misrepresentation to avoid a policy must have been made with actual intent to deceive.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1774–1776.]

**4. INSURANCE ⬤ᴖ271—FRAUD—EFFECT.**

The effect of false statements amounting to a fraud to avoid a contract of life insurance is not dependent on the fact that they were made by the person suing on the policy, or that they were made without his knowledge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 571.]

**5. INSURANCE ⬤ᴖ271—FRAUD—EFFECT.**

Where misrepresentations, or forfeiting breach of warranty, in relation to a life policy, is attributable to a beneficiary or to some third person, the breach of warranty or misrepresentation defeats the rights of the beneficiary.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 571.]

**6. INSURANCE ⬤ᴖ669(7)—LIFE INSURANCE—ACTION—INSTRUCTIONS.**

In suit on a life policy defended for insured's breach of warranty as to health when applying for reinstatement after lapse for nonpayment of premium, under the pleadings and evidence the extent of the participation of plaintiff beneficiary in the reinstatement of the lapsed policy was a material inquiry for the jury, and it should have been properly instructed on such phase of the case.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1774–1776.]

Appeal from Law and Equity Court, Morgan County; Thomas W. Wert, Judge.

Action by Mrs. E. M. Hayes against the Pacific Mutual Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Plea 3 alleged: That insured, Arthur J. Maynor, failed to pay the premium which said policy stipulated he should pay September 7, 1913, or else said policy should become lapsed and void, unless the same should be reinstated by Arthur J. Maynor's warranty of good health and condition. That after

said policy lapsed and became void, he, said Maynor, to procure reinstatement of said insurance, executed the following warranty of present health' and condition, which is as follows:

Arthur J. Maynor of New Decatur, Ala., to whom policy No. 244486 was issued by the Pacific Mutual Life Insurance Company of California, a premium on which was due on September 7, 1913, hereby warrants that he is at this time in all respects in good, sound, and unimpaired health and condition; that he has not within one year prior to the date hereof consulted any physician, surgeon, or other practitioner respecting his mental · health or condition; and that *it is the insured's understanding* that said company accepts at this time payment of said premium, and issues its receipt therefor solely in consideration of the warranties herein made.

And defendant avers that said warranty was breached, and thereby the policy rendered void in this: That the said Arthur Maynor was at the time he signed said warranty afflicted with heart disease, from which he soon thereafter died. And with respect to the premium paid, in connection with said warranty of present health and condition, to procure a reinstatement of said policy, defendant tendered to plaintiff the amount due to her, to wit, $23.02, before this action was commenced, and now brings the money into court.

The other pleas are 4, 5, 7, 8, 9, and 11; and they adopt the averments of plea 3, except as to the breach of warranty, and that is practically the same, merely changing the character of the disease. The other pleas and replications, together with their rejoinders, sufficiently appear. The health certificate appears in plea 3. The following charges were refused to defendant:

(6) The court charges the jury that although Maynor may not have known that he had heart disease when he signed the warranty of present good health and condition, yet if he did know if he was sick, and if he knew that he recently, or since his original examination for insurance, advised with or consulted a physician with respect to his health, and if he did know that he was really sick when he consulted said physician, the court charges the jury that it was his duty to have correctly stated that he did consult a physician, and if he failed so to do his failure was a misrepresentation and concealment of a matter tending to increase the risk of loss, and the verdict must be for defendant.

(29) If the jury find from the evidence that said Maynor did not pay said premium on the day that it was stipulated that it should be paid. as set out in replication 2, and if they believed further from the evidence that said Maynor executed the alleged warranty as set out in replication 2, and if they further believe from the evidence that he tendered to defendant the premium due on said policy, and that defendant accepted said premium, and if they further believe from the evidence that said Maynor was then sick and knew that he was sick, or knew that he had consulted or advised with a physician, and if defendant did not know that he was sick, and did not know he had consulted and advised with a physician, then the verdict must be for defendant, and you cannot find for plaintiff on replication 2.

---

⬤ᴖFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

E. W. Godbey, of Decatur, for appellant. W. T. Lowe and Callahan & Harris, all of Decatur, for appellee.

This cause was submitted and considered under rule 46; the opinion of the court being delivered by Mr. Justice THOMAS.

It is not necessary that we indulge in a detailed discussion of the many assignments of error. The suit, which was on a policy of life insurance, was in the Code form. Code, vol. 2, p. 1196, form 12; Pence v. Mut. Ben. L. Ins. Co., 180 Ala. 583, 61 South. 817; Patterson v. Grand Lodge, 162 Ala. 430, 50 South. 377.

[1] Demurrers to pleas 3, 4, 5, 7, 8, 9, and 11 were properly sustained on the authority of Massachusetts Mutual Life Insurance Co. v. Crenshaw, 195 Ala. 263, 70 South. 768; s. c., 186 Ala. 460, 65 South. 65; Code, § 4572.

Pleas 2 and 6 were to the effect that, by reason of a failure to pay the agreed premium according to contract stipulations, there was a lapse of the policy.

Plea 9a set out the policy conditions as to the payment of premiums, averred a default, and, in consequence thereof, a lapse of the policy, and averred assured's application for a restoration to benefit thereunder, which, by reason of previous policy requirements, became a part thereof, and assured's warranty that he had not, between the time of the last application, and that for restoring said policy consulted a physician. This warranty, it is averred, was untrue, because assured was then suffering from a serious affection of the heart, which was discovered by said physician so consulted; and it is alleged that this misrepresentation "was as to a matter warranted and guaranteed by the said Maynor [the assured] to be true, and was as to a matter that increased the risk of loss." This plea was held free from demurrer, though it may have been subject to the infirmity pointed out in Crenshaw's Case, supra.

In substance plea 10 averred, among other things, that the said Maynor "falsely and fraudulently represented to this defendant that his health was good," that at the time of said false representation the said Arthur J. Maynor knew that said representation was false and made the same with the intent to deceive defendant, and did so deceive it and induce it "to execute the contract here sued on." Thus plea 10 complied with the law announced in Massachusetts Mutual Life Insurance Co. v. Crenshaw, supra.

Plea B was:

"The defendant avers that the insured failed to pay the quarterly premium due September 7, 1913, when it became due, or within 30 days thereafter, whereby the said policy lapsed and became void; that the insurant was the young, unmarried son of the plaintiff, and a member of her household; that she had prevailed upon him to transfer and assign to her the said policy of insurance; that after the said policy had lapsed, the insured was diseased, and became the subject of medical attendance and attention on the part of Dr. W. H. Watson, a physician; that after the said policy lapsed, the plaintiff became aware of insurant's critical condition, and of the medical attendance aforesaid; that after such medical attendance, she undertook to pay up the aforesaid premium; that in doing so, she fraudulently suppressed the fact of insurant's illness, and the previous medical attendance; that defendant did not know, at the time of accepting said premium, and allowing said policy to become ostensibly reinstated, of insurant's illness, or said medical attention, and had it known thereof, it would not have accepted said premium, and would not have effected a restoration of the lapsed policy; that the defendant did not know of the disease and medical attention until after insurant's death, when it announced to plaintiff its rescission of said policy contract, and undertook to return to plaintiff the said premium, which she refused, and that on the filing of the original pleas in this cause, the same was brought into court, and is here now tendered to the plaintiff."

By replications 8 and 9 plaintiff sought to make full answer to pleas 9a and 10, the effect of the replications being that plaintiff had full knowledge of the facts that:

"The said statement had already been prepared by the defendant in advance, and all the statements and warranties therein contained had been inserted therein by the defendant in advance and without consultation or information from Arthur Hayes. And plaintiff avers that the said Penney called by the house of Arthur Hayes early in the morning, about 7 o'clock, and when said statement was presented to him, stated in response to an inquiry from Arthur Hayes that the premium on said policy had not been paid until several days after it was due, and the signature of the paper or statement was a mere matter of form in order to reinstate the policy of insurance. And relying on such statement of said Penney, who at that time was apparently in a hurry, the said Arthur Hayes signed said statement without reading the same, or having the same read over to him, or without otherwise knowing that there was any such representation therein as that he had not consulted a physician, within one year prior to the date thereof, respecting his mental and physical health or condition."

To these replications defendant rejoined:

"That the plaintiff ought not to profit by the matters and things set forth in said replication, for the reason that she herself was the owner of said policy by assignment from her son, the insurant, who was an inmate of her household, prior to the date of said certificate of good health, etc., and knew the matters and things rendering said certificate false, and on or about the 24th day of October, 1913, she received from the defendant's state agents a letter as follows, relating to policy sued on, viz.: 'Tuscaloosa, Ala., 10/23/13. Mr. E. M. Hayes, 1302 4th Ave., New Decatur, Ala., No. 244486, Maynor, A. J. Dear Madam: Replying to your notation on our notice of the 20th inst., bed [meaning "beg"] to advise that on October 22d we received from Penney & Whitman remittance covering premium due September 7th on the above-numbered policy, but on account of the grace period of thirty days having expired, before the payment was made, we cannot deliver official premium receipt until we are furnished with health certificate by Mr. Maynor. We wrote Mess. Penney & Whitman to this effect, inclosing necessary form, and are sure they will give the matter their attention. Yours very truly, W. F. Fitts & Son, State Agents.' That notwithstanding she received said letter, and was apprised of the purpose and object of said certificate, she continued to suppress information of

insurant's condition during the remainder of his life; and the defendant relied upon the certificate, and upon the statements therein, and but for the same would not have accepted the risk; and the said agent, Penney, was ignorant all the while that the said insurant had been attended by said physician, and so was the defendant; and the plaintiff by her conduct in suppressing her knowledge and information committed a fraud upon the defendant."

[2] This rejoinder, taken as a part of said respective pleas with which it became incorporated, presents a sufficient issue of fraud in the reinstatement of the policy of insurance under section 4572 of the Code of 1907. The material correspondence between plaintiff, the assured, and the defendant, as disclosed by the record and made a part of the pleading, is as follows:

"Agency of the Pacific Mutual Life Ins. Company of California. Agency at Tuscaloosa, Ala. Date 10/20/13. Mr. A. J. Maynor, New Decatur, Ala. Dear Sir: We notice that the premium of $22.70 due September 7, 1913, on policy No. 244486 on your life has not been paid. In no event is there more than thirty days' grace. We inclose a blank form to be signed by you, and forwarded with your remittance, in order to place the policy in full force, but if this is not done within thirty days after the grace period, the company will require other evidence of insurability satisfactory to its executive office before the policy can be revived. Prompt attention will certainly prove to your advantage, and for your best interests. Trusting we may receive an early response, we are, Very truly yours, W. F. Fitts & Son. Mrs. E. M. Hayes, New Decatur, Ala. 1802 4th Ave."

The marginal reply of plaintiff thereto is:

"Paid this policy to Mr. Penney, your agent, in New Decatur, some days ago. Let me know if it is all right or not. Mrs. E. M. Hayes."

The response of the defendant to this marginal note of inquiry was:

"Tuscaloosa, Ala. 10/23/14. Mrs. E. M. Hayes, 1302 4th Ave., New Decatur, Ala. No. 244486, Maynor. Dear Madam: Replying to your notation on our notice of the 20th inst. beg to advise that on October 22d we received from Penney & Whitman remittance covering premium due September 7th on the above-numbered policy, but on account of the grace period of thirty days having expired before payment was made, we cannot deliver official premium receipt until we are furnished with health certificate by Mr. Maynor. We wrote Messrs. Penney & Whitman to this effect, inclosing necessary form, and are sure they will give the matter their attention. Yours truly, W. F. Fitts & Son, State Agents."

Another letter from W. F. Fitts & Son to Penney & Whitman, concerning the lapse of the policy for nonpayment of premium, is as follows:

"Tuscaloosa, Ala., 10/22/13. Messrs. Penney & Whitman, New Decatur, Ala. Gentlemen: No. 244486. Maynor, A. J. Yours of the 21st inst. inclosing check for $22.70 to cover quarterly premium due September 7th, by the above policy holder, to hand, and we thank you for your attention to this matter. However, the grace period of thirty days having expired, we cannot send out official premium receipt until we have been furnished with warranty of present health on the form herewith inclosed. The company is very strict in this requirement, or we would not ask you to give this matter additional attention. Thanking you in advance, we beg

to remain, yours very truly, W. F. Fitts & Son, State Agents."

The reply of Penney & Whitman to Fitts & Son is as follows:

"New Decatur, Ala., Oct. 21, 1913. Messrs. W. F. Fitts & Son, Tuscaloosa, Ala. Gentlemen: Pol. No. 244486. Arthur J. Maynor. Inclosed herewith check for $22.70 covering on quarterly premium on the above. Please send receipt, and oblige, Very truly yours, Penney & Whitman, Agts."

The reporter will set out the health certificate signed by the insured.

[3] The defendant requested certain written charges, of which 6 and 29 are typical, and which were properly refused as not complying with the rule declared in Crenshaw's Case, supra.

Under plea B, and the evidence supporting defendant's plea of estoppel against the right of recovery by the plaintiff beneficiary, defendant requested charge 26 as follows:

"If the jury believe from the evidence that the insured failed to pay the quarterly premium due on September 7, 1913, when it became due, or within thirty days thereafter, then the court charges you that the said policy thereby lapsed and became void; and if the jury further believe from the evidence that A. J. Maynor was the unmarried son of the plaintiff, and a member of her household, and that she had prevailed upon him to transfer and assign to her the said policy of insurance, and that after the said policy had lapsed, the insured was diseased, and became the subject of medical attention on the part of Dr. W. H. Watson, and if they further believe from the evidence that after the said policy lapsed, the plaintiff became aware of the said Arthur J. Maynor's physical condition and medical attention, and after such medical attention, she undertook to pay up the aforesaid premium, and if in so doing, she fraudulently attempted to suppress the fact of his previous medical attention and condition, and if the defendant did not, at the time of accepting said insurance premium, and allowing the said policy to become ostensibly reinstated, know of such medical attention, and said condition, and if the jury further believe from the evidence that if the defendant had known thereof, it would not have accepted said premium, and would not have effected the restoration of said policy, and if they further believe from the evidence that the defendant did not know of the disease and the medical attention, until after insured's death, and if, after such knowledge, it announced to the plaintiff its rescission of said contract, and undertook to return to plaintiff the premium, and the plaintiff refused it, and that on filing suit in this case, the same was brought into court in legal tender, and tendered to the plaintiff, and if the same was accepted by the defendant in ignorance of insured's illness, and of the medical attention aforesaid, then the jury must find a verdict for the defendant."

A comparison of this charge, with the oral charge and other given charges for the defendant, discloses that it was not covered by such charges. Gen. Acts 1915, p. 815.

[4] Was such participating beneficiary bound by the estoppel so pleaded? In answer to this inquiry, it is important to determine when the rights of the beneficiaries are affected by false statements amounting to a fraud on the insurers, made in the application for insurance or for the reinstatement of a lapsed policy of insurance. Though there

may be some exceptions, the general rule is, the effect of false statements amounting to a fraud that avoids the contract is not dependent on the fact that they were made by the person suing on the policy, or that they were made without the knowledge of such person. Hubbard v. Mutual Reserve Fund Life Ass'n, 100 Fed. 719, 40 C. C. A. 665; Mutual Benefit Life Ins. Co. v. Cannon, 48 Ind. 264; Summers v. Met. Life Ins. Co., 90 Mo. App. 691; Fitch v. American Pop. Life Ins. Co., 59 N. Y. 557, 17 Am. Rep. 372; Carpenter v. Amer. Ins. Co., 1 Story, 57, Fed. Cas. No. 2,428; Burruss v. Life Ass'n, 96 Va. 543, 32 S. E. 49. In Keller v. Home Life Ins. Co., 95 Mo. App. 627, 69 S. W. 612, it was held that a beneficiary of a policy is bound by the legal stipulations therein, and that the policy is subject to be defeated by fraud on the part of the insured, though he may not have participated therein. Supreme Conclave Knights of Damon v. O'Connell, 107 Ga. 97, 101, 32 S. E. 946; Estes v. World Mutual Life Ins. Co., 6 Hun (N. Y.) 349; Prudential Ins. Co. of America v. Fredericks, 41 Ill. App. 419. The rule that a breach of warranty, or misrepresentation, avoids the rights of the beneficiary, though such misrepresentation or breach of warranty be not made by, or participated in, by the beneficiary, has been applied where a creditor is a beneficiary. Mutual Life Ins. Co. v. Wager, 27 Barb. (N. Y.) 354; Burruss v. National Life Ass'n, supra. It has been applied also where an assignee of a life policy is a beneficiary. Northwestern Life Ins. Co. v. Montgomery, 116 Ga. 799, 43 S. E. 79; Union National Bank v. Manhattan Life Ins. Co., 52 La. Ann. 36, 26 South. 800; Supreme Council Catholic Benevolent Legion v. Boyle, 10 Ind. App. 301, 37 N. E. 1105; Jones v. National Mutual Ben. Ass'n (Ky.) 2 S. W. 447; Holland v. Supreme Council Order of Chosen Friends, 54 N. J. Law, 490, 25 Atl. 367; Wright v. Mutual Life Ass'n, 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. Rep. 749; 3 Cooley's Briefs on Ins. pp. 2018-2023. In the foregoing authorities it will be observed that the misrepresentations made, or the breach of warranty, was that of the insured.

[5] A similar principle applies, however, where the misrepresentations, or forfeiting breach of warranty, is attributable to the beneficiary or to some third person. In National Life Ins. Co. v. Minch, 53 N. Y. 144, the Court of Appeals reversed the decision in the cause. 6 Lans. (N. Y.) 100. The holding was, that the company may recover back from a husband, as his wife's administrator, the amount paid to him on a policy of insurance on the life of his wife, on the ground of conspiracy to cheat and defraud the company by means of false and fraudulent representations in obtaining the insurance. That is to say, the effect of this decision was, that though there may be insufficient evidence to show the wife's knowledge of the fraudulent misrepresentations, yet if the hus-

band as her agent secured the policy by fraud, such fraud avoids the policy. Graves v. Spier, 58 Barb. (N. Y.) 349. In March v. Metropolitan Life Insurance Co., 186 Pa. 629, 646, 40 Atl. 1100, 65 Am. St. Rep. 887, the application for insurance was signed by both the insured and the beneficiary, and it was held that though the insured may have been ignorant of the fact represented, the beneficiary, who had made a representation which he knew was untrue, could not recover. The converse of the proposition is found in the case of Union Mutual Life Insurance Co. v. Wilkinson, 13 Wall. 222, 232, 20 L. Ed. 617, where the beneficiary made the application and the damnifying misrepresentations, and it was declared that this avoided the policy the same as if the insured had made them.

To the like effect was the decision in Rawls v. American Mutual Life Insurance Co., 27 N. Y. 282, 294, 84 Am. Dec. 280, where the false representations were made by a third person, a friend of the insured, to whom he had referred the company for the purpose of inquiry. The ground of the decision was, that the statement of such third person was not made a part of the contract, "nor was the contract based on it." The Rawls Case, may be distinguished from that of National Insurance Co. v. Minch, supra, in that, in the Minch Case, the representations were made by one interested in the insurance. The same rule was inferentially declared in Eclectic Life Insurance Co. v. Fahrenkrug, 68 Ill. 463. Where a beneficiary, in paying the premium, stated to the agent of the insurer, in answer to his inquiry on the subject, that her husband, who was absent, "had written to her that he was in his usual health," it was held that the policy would not be avoided, even though such statement was false. Mutual Ben. Life Insurance Co. v. Robertson, 59 Ill. 123, 126, 14 Am. Rep. 8. The reason assigned by the justice for this holding was that:

"A warranty is in the nature of a condition precedent; it must appear on the face of the policy; or, if on another part of it, or on a paper physically attached, it must appear that the statements were intended to form a part of the policy: or, if on another paper, they must be so referred to in the policy as clearly to indicate that the parties intended them to form a part of it. A warranty cannot be created nor extended by construction. Reynolds, Life Insurance, § 85 et seq.; Campbell v. New England Insurance Co., 98 Mass. 381; Burritt v. Saratoga Insurance Co., 5 Hill (N. Y.) 188, 40 Am. Dec. 345; Jefferson Insurance Co. v. Cotheal, 7 Wend. (N. Y.) 72 [22 Am. Dec. 567]. The only proof to sustain the charge of fraud and misrepresentation was the remark of appellee to the agents of the company that she had received a letter from the deceased; that he was in Missouri, and in his usual health. The deceased was a traveling agent, and the fact of his absence from home was known to the agents of the company. This statement was verbal, and is not referred to in the policy, and must be deemed to have been a mere representation. It was independent of the contract, and collateral to it. It may have been untrue, and yet not avoid the policy. It must be proved to have been material, and that it induced the risk. Farmers' In-

surance Co. v. Snyder, 16 Wend. (N. Y.) 481 [30 Am. Dec. 118]."

When the Robertson Case is thus understood, it is seen not to be an authority contrary to the foregoing decisions.

[6] We are of the opinion that reversible error was committed in the refusal of charge 26. Under the pleading and the evidence, the extent of the participation of the beneficiary under the policy (this plaintiff), in the reinstatement of the lapsed policy, was a material inquiry for the jury. If its reinstatement was preceded by vitiating fraud, the result of misrepresentation made with actual intent to deceive, and of the written matter misrepresented, that increased the risk of loss; and if such misrepresentation was made or permitted by the plaintiff, as such beneficiary, the jury should have been properly instructed on this phase of the case. Such proper instruction was not given, and for this error the cause is reversed and remanded.

It will not be necessary to discuss the other assignments of error, since the case will have to be retried, and such questions may not be presented on the second trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.