28398. BANKERS HEALTH & LIFE INSURANCE CO. *v.*
CROZIER.

DECIDED JULY 16, 1941.

*Turpin & Lane, M. Davis,* for plaintiff in error.

*T. T. Molnar,* contra.

MacIntyre, J. Blanche Crozier, the beneficiary in the policy in question, brought suit against the Bankers Health and Life Insurance Company on a policy of life insurance insuring the life of her husband, Jeff Crozier, for $175. The policy was issued December 17, 1923, and the premium was thirty-five cents per week. The premium was paid regularly by Blanche Crozier, and this was known to the company's agent, Roy Hatcher, whose duty it was to collect the premiums, sometimes from Blanche Crozier personally and sometimes from Jeff Crozier, the insured, to whom she had sent the money when she was not in Cuthbert, Georgia. During the summer of 1935, the insured got very sick. He was unable to work and his wife made arrangements to take him to North Carolina in the hope that he would recover, but he got worse. Shortly after Jeff Crozier's return from North Carolina, and while his condition grew worse, Roy Hatcher, agent for the company, wrote Blanche Crozier that Jeff Crozier wanted to cash in on his policy, and that Blanche's signature was necessary before they could cash the policy. Roy Hatcher sent a blank with his letter (sometime between June and August, 1935), requesting Blanche Crozier to sign the same. She returned the blank unsigned, and advised Hatcher that she did

not want the policy cashed and wanted the policy to continue in force in order that she might use the money to bury Jeff Crozier in the event he should die. Nothing else was said to Blanche about this matter, and she continued sending money to Jeff Crozier to pay the premiums, which the company admits he did until October 7, 1935, the date of the payment of the last premium. The policy was marked lapsed after four weeks from October 7, 1935. In spite of the plaintiff's refusal to sign the certificate to cash the policy, the company agreed with Jeff Crozier that it would pay him $42 on the policy. The company issued him a check dated October 18, 1935, and the brief of evidence recites that on the back of it were the following indorsements: "'Indorsement of this check constitutes receipt in full for the following items: cash-surrender value, B-27917 [the number of the policy], this check good when indorsed by Jeff Crozier in person and by Jeff Crozier for Blanche Crozier. The Bankers Health and Life Insurance Company, A. H. Jones, secy-treasurer,' and it pays Jeff Crozier, X his mark, witness J. C. Terry, ass't. 'Blanche Crozier by Jeff Crozier, X his mark, witness J. C. Terry, ass't.' For deposit, The Bankers Health and Life Insurance Company, Albany, Georgia." The indorsement of the Albany Exchange National Bank, Albany, Georgia, also appeared on the check. The check was cashed by the representatives of the company, and Jeff was told at the time that it was for the settlement of the policy and that the policy was no longer in force and was null, void, and dead.

The defendant filed a dual defense, to wit, that the insured had received the cash surrender or reserve value of the policy, and it was for that reason no longer in force; that the policy had lapsed because of nonpayment of premiums. The first mentioned defense was withdrawn, and it was agreed that only the latter would be relied on. The sole question is whether the policy lapsed because of nonpayment of premiums.

■ Although generally no agency exists between the beneficiary and the insured, yet the beneficiary can not claim the benefits arising under the policy unless he ratified the acts of the insured in taking out the policy, in paying the premiums, and is bound by the insured's failure to pay the premiums where such is the case. Therefore, where the beneficiary sues on a policy of insurance the courts rightly treat the contract as one, not between the insured

and the company, but between the company and the beneficiary; for, by seeking to enforce the contract, the beneficiary necessarily adopts as his own the acts of the insured with reference to the payment (or nonpayment) of the premiums, and a ground for avoidance or forfeiture of the contract of insurance, which is available against the insured for a failure to pay the premiums, may be asserted as against the beneficiary claiming the benefits of the contract. *Supreme Conclave Knights of Damon* v. *O'Connell,* 107 *Ga.* 97, 102 (32 S. E. 946); 32 C. J. 1314, § 563. In other words, the beneficiary becomes bound by the failure of the insured to pay the premiums to the same extent as would have been the case had the insured been the accredited agent of the beneficiary at the time the premium was due. *Supreme Conclave Knights of Damon* v. *O'Connell,* supra.

"The provision for the punctual payment of the premium when due is of the essence and substance of life insurance, and a failure to comply therewith in strict accordance with the requirements of the contract, in the absence of any waiver, express or implied, inevitably results in a forfeiture of the policy." *Illinois Life Insurance Co.* v. *McKay,* 6 *Ga. App.* 285 (64 S. E. 1131). Ordinarily, the failure to pay a premium on an insurance policy when due works a forfeiture of the policy, but forfeitures are not favored by the law and should not be declared unless demanded by the terms of the contract. *Ætna Life Ins. Co.* v. *Palmer,* 159 *Ga.* 371, 373 (125 S. E. 829); *Arnold* v. *Empire Ins. Co.,* 3 *Ga. App.* 685, 697 (2) (60 S. E. 470). The policy in question provides that for a failure to perform this duty of paying the premium "within four weeks from the date upon which said premium was due, this policy shall thereupon become null and void and all premiums paid hereon shall be forfeited to the company, except as herein provided." It must therefore be conceded that the company had the right to declare a forfeiture of the policy for nonpayment of the premium when due; for this was a condition precedent to the life of the policy. It is the rule with reference to such stipulations as to payment of premiums that they "must be strictly and literally complied with, in the absence of any waiver, constructive or actual, and the premium must be paid when, where, and in the manner the policy provides." *Illinois Life Insurance Co.* v. *McKay,* supra.

In the instant case the death of the insured occurred not only

subsequently to the date of the agreement cancelling the policy, but also more than eight months after the date ending the four weeks grace period. Though the defense "that the insured had received the cash surrender or reserve value of the policy and it was for that reason no longer in force" had been abandoned, yet the beneficiary was barred by reason of said contract or agreement between the insured and the company to surrender the policy for its cash value and cancelling the policy, she having a mere expectancy until the death of the insured and not a vested right in the policy, and the policy could be cancelled by such agreement without her consent. *Bankers Health & Life Insurance Co.* v. *Crozier*, supra. Nor did the beneficiary, in the absence of a contract, obtain a vested right in the policy merely because she paid the premiums. 2 Couch's Cyc. of Ins. Law, 1038, § 351. However, in any event, her rights were barred because of the nonpayment of the premiums which forfeited the policy. There was no waiver of the company's right to have the premiums tendered, as contended by the defendant in error, either express or implied. It appears from her own testimony that she did not go back to Cuthbert any more after August, 1935, until August 6, 1936, the day after the insured died; that she had possession of the policy during the entire time until she brought it to Cuthbert with her and turned it over to Mr. Roy Hatcher to collect thereon; and that she had no notice of the policy being settled with Jeff Crozier in October, 1935, or of its being lapsed; but she testified only that she sent the money to Jeff Crozier from August until October, 1935, and could not swear that Jeff Crozier paid the premiums, but merely stated: "Of course I could not swear it but I know he paid them [the premiums]." She also testified that she did not have the receipts for the payment of the premiums because she threw them away in New York. Nor is there any evidence that the plaintiff or the insured paid the premiums after October 8, 1935. It also appears from her testimony that she did not make any tender of the premiums after October, 1935. In fact, all during the time she was absent from Cuthbert she did not have any correspondence with Mr. Hatcher or the company's branch or home office. If, during the entire time she was absent from Cuthbert, she had no correspondence with the company, paid no premiums, and made no tender of payment after October, 1935, then she would, with reference to tender of payment

and payment of the premiums, have had to rely on her agent (the insured). This he did not do and he in effect being her agent, as above pointed out, she was bound by his acts or his failure to act.

Under what has been said we think the evidence did not authorize the verdict allowing a recovery under the policy, but on the contrary it showed that the policy had been forfeited for nonpayment of premiums. The judge therefore erred in overruling the motion for new trial.

■ Special ground 1 is but an elaboration of the general grounds and has in effect been considered.

■ Under the evidence and the issues involved the judge erred in failing, on proper request, to charge the jury as follows: "That although the beneficiary may have an interest in a life-insurance policy on which she paid or assisted in paying the premiums, this interest is lost where the premiums are not paid and the policy is allowed to lapse for failure to keep up the premiums in accordance with the terms of the policy. Where the beneficiary holds an interest in a policy and wishes to keep it in force, it is the beneficiary's duty, if the insured fails to pay the premiums on this policy or [to?] at least tender the premiums to the duly-authorized agent of the company or to send it to the home office. A policy that has lapsed, by no fault of the company, is not a legal and binding contract between the company and the insured. Such cancellation of a policy, as for nonpayment of the premiums, does not amount to a repudiation of the policy. The burden of proof lies with the plaintiff to show that she tendered the premiums to the agent or the home office, when they were due, and within the time agreed upon in the policy, or made some effort to do so." The request was accurate and sound as an abstract principle of law as applied to the facts of this case. It was not covered by the general charge. The failure so to charge was reversible error because it was based on a valid defense and there was evidence to support it. Under the facts of this case the failure so to charge, on request, was reversible error.

■ Special ground 3 complains of the following excerpt from the charge: "I charge you further, gentlemen, that if the insurance company, through its agent or agents, without the consent of the beneficiary, settled the policy with the insured, and considered and declared the policy as satisfied and of no force thereafter, then

it would relieve the insured from paying or tendering thereafter any premiums." Special ground 4 complains of the following excerpt from the charge: "In ordinary life insurance, where no power of divestiture or to change the beneficiary is reserved in the policy, the issuance of the policy confers a vested right upon the person so named as beneficiary, and the insured can not transfer such interest to any other person without the consent of the beneficiary." Under what has been said in division 1 of this opinion, and by the Supreme Court in answer to the questions certified to it by this court, the excerpts from the charge were not correct principles of law applicable to the facts of this case. The excerpts complained of in these grounds are taken from the plaintiff's request to charge, and evidently the judge, under the ruling in *Roberts* v. *Northwestern Ins. Co.*, 143 *Ga.* 780 (85 S. E. 1043), accepted the plaintiff's theory of the case and gave it in charge, whereas the correct rule applicable was stated by the Supreme Court in answer to said questions. The *Roberts* case is distinguished on its facts from the instant case by the Supreme Court. The judge committed reversible error in so charging.

*Judgment reversed.* *Broyles, C. J., and Gardner, J., concur.*